NUMBER
13-98-562-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

G. J. PALMER, JR., INDIVIDUALLY AND AS

MANAGING PARTNER ON BEHALF OF QUEEN

ISABELLA DEVELOPMENT JOINT VENTURE 

AND QUEEN ISABELLA DEVELOPMENT JOINT

VENTURE AND 1629
SERVICE CORPORATION,                      Appellants,

 

                                                   v.

 

ESPEY HUSTON & ASSOCIATES, INC., 

MAX BURKHART, MBA ARCHITECTURE GROUP,

MICHAEL J. BLUM, AND
VALCON, INC.,                                Appellees.

___________________________________________________________________

 

                         On
appeal from the 92nd District Court

                                  of
Hidalgo County, Texas.

__________________________________________________________________

                                   O
P I N I O N

 

                    Before
Justices Dorsey, Yañez, and Rodriguez

                                Opinion
by Justice Rodriguez

 








Appellants, G.J. Palmer, Jr., individually and as managing
partner on behalf of Queen Isabella Development Joint Venture and Queen
Isabella Development Joint Venture and 1629 Service Corp., appeal from directed
verdicts granting take nothing judgments in favor of appellees, Max Burkhart,
MBA Architecture Group (MBA),[1]
Michael J. Blum, Valcon, Inc.,[2] and Espey
Huston & Associates, Inc.  By six
points of error, appellants complain that (1) the record is neither complete
nor proper for this appeal, and (2) the trial court erred in granting appellees= motions for
directed verdict, and in excluding evidence. 
We affirm.

                                                    I.  Background

This case involves the development of a marina in the Laguna
Madre at Port Isabel, Texas.  Queen
Isabella Development Joint Venture (QID) hired MBA, an architectural,
engineering and planning firm, to assist with the development of the
marina.  MBA worked on the planning and
design phase of the project, including the design of a breakwater to create an
artificial harbor by forming a barrier between waters outside the harbor and
the interior of the marina.  








MBA hired Espey Huston, an engineering firm, to (1) assist in
handling permit applications with the Army Corps of Engineers; (2) conduct a
bathymetric study;[3]
(3) conduct a wave-attenuation or Awave-climate@ study;[4]
and (4) later, perform a written analysis of four different types of generic
breakwaters, and how they typically would react to the wave-climate/attenuation
study.  Espey Huston=s final report
was completed in February 1985.  

Because MBA did not provide in-house structural engineering
services, it sub-contracted this work to Donald Dragutsky,[5]
a licensed civil engineer.  Prior to the
completion of the breakwater design, MBA withdrew from the project.  Thereafter, Dragutsky contracted with
appellants, and modified the design prepared by Espey Huston.  Dragutsky=s design was a variation on a timber-wall
breakwater depicted in Espey Huston=s February 1985
report.  Bellingham Marine constructed
the breakwater.  After construction was
complete, a series of storms with prevailing northerly winds generated waves
which overtopped or went under the breakwater and caused damage to the docks
and boats inside the marina.








In 1988, appellants sued appellees for breach of contract,
negligence, breach of warranty, strict liability, and violations of the Texas
Deceptive Trade Practices and Consumer Protection Act (DTPA).[6]  Nine years later, in October 1997, the case
went to trial.  After appellants= case-in-chief,
the trial court found Athere [was] no
evidence of probative force to support a recovery for Plaintiffs or to submit
the case to a jury,@ and granted
all appellees= motions for
directed verdict.

II.  The Appellate Record

By their first point of error, appellants contend the appellate
record is not complete or proper.  They
complain of (1) unrecorded bench conferences, (2) inaccuracies and missing
testimony and arguments in the trial transcript, (3) lost or misplaced original
exhibits, and (4) an improperly certified statement of facts.[7]

A.  Unrecorded Bench
Conferences

Appellants complain of four unrecorded bench conferences.  First, they contend the court reporter failed
to record a bench conference that occurred during appellants= examination of
Burkhart.  Espey Huston objected to a
question asked of Burkhart because it called for an opinion.  An unrecorded bench conference followed.  After the bench conference, appellants asked
Burkhart the same question and he responded. 
Again, Espey Huston objected, this time on the basis that the response
was non-responsive, hearsay, an opinion, and was not based on personal
knowledge.  The court sustained the
objection and struck the response. 
Appellants did not challenge the ruling and no bench conference, recorded
or unrecorded, followed.








The second unrecorded bench conference occurred after
appellants offered their fourth exhibit into evidence.  Immediately following the unrecorded bench
conference, outside the presence of the jury, the trial court and counsel had a
lengthy discussion on exchanging exhibits, not interrupting the trial with
objections regarding exhibits, and witnesses rendering expert testimony.  This exchange was recorded and appears in the
transcript of the trial proceeding.

The third unrecorded bench conference occurred during
appellants= direct
examination of Dragutsky, presented by way of deposition testimony.  During the course of the testimony, after the
trial court sustained appellee=s objection
that the testimony called for an opinion, appellants requested a bench
conference.  Following the bench
conference, appellants continued presenting the deposition testimony of
Dragutsky.

The last unrecorded bench conference occurred during appellants= case-in-chief;
after they had offered excerpts of the deposition testimony of Paul Jensen, the
vice-president of Espey Huston, passed the witness, and discussed exhibits entered.  Appellant Palmer=s trial counsel
asked to approach the bench on another issue. 
After the bench conference, counsel called Palmer as the next witness.








A court reporter is required to make a full record of the
proceedings unless excused by agreement of the parties.  Tex.
R. App. P. 13.1(a).  No such
agreement is apparent on the record.  We
recently held, in a criminal proceeding, the reporter=s duty to
record proceedings, including bench conferences that occur after the trial
commences, is mandatory pursuant to appellate rule 13.1, and, thus,
noncompliance is error.  See Tanguma
v. State, 47 S.W.3d 663, 667 (Tex. App.BCorpus Christi 2001, pet. ref=d); but see
Polasek v. State, 16 S.W.3d 82, 88-89 (Tex. App.BHouston [1st
Dist.] 2000, pet. ref=d) (rule
13.1(a) conflicts with section 52.046(a) of Texas Government Code, and is
void).[8]  Likewise, in this civil case, we conclude the
court reporter=s failure to
record and transcribe the identified bench conferences that occurred after the
trial commenced, without agreement of the parties, constitutes error.  See Tex.
R. App. P. 13.1(a).  However, a
failure to record bench conferences does not automatically result in
reversal.  








We may not reverse unless the error complained of probably
caused the rendition of an improper judgment or prevented an appellant from
properly presenting the case to the appellate court.  Tex.
R. App. P. 44.1; cf. Tanguma, 47 S.W.3d at 667 (pursuant to
appellate rule 44.2, this Court analyzed whether error was reversible
constitutional error or reversible non-constitutional error affecting
substantial rights).  Appellants asserted
no consequences from the failure of the court reporter to record the four bench
conferences.  They do not claim the error
probably caused rendition of improper judgments.  See Tex.
R. App. P. 44.1(a)(1).  Neither
have they set out how the failure of the court reporter to record the four
bench conferences prevented appellants from properly presenting their case to
this Court.  See id. at  44.1(a)(2). 
Furthermore, based on our review of the record, we cannot ascertain
support for these arguments, had they been made.  Accordingly, while we conclude the court
reporter=s failure to
completely record the bench conferences at trial was error, such failure is not
reversible.  See id. at
44.1(a).  We must, therefore, disregard
the error.  See id.

B.  Inaccurate/Lost
Record

Appellants next argue the statement of facts is replete with
inaccuracies which call the entire statement of facts into question.  Appellants refer us to inaccuracies in eight
lines of transcription in the five-volume reporter=s record.
Although the referenced portions of the record contain some unintelligible
words or phrases, when reviewed in context, the meaning is understandable.  Thus, we cannot conclude the entire statement
of facts is called into question on this basis.

Appellants also generally refer us to other inaccuracies in the
reporter=s record,
inaccuracies they contend are impossible to set out Awithout
enormously exceeding the page limits of [their] brief.@  However, a party asserting error on appeal
bears the burden of showing that the record supports the contention raised, and
of specifying the place or places in the record where matters upon which they
rely or of which they complain are shown. 
Tex. R. App. P. 38.1(h); Happy
Harbor Methodist Home, Inc. v. Cowins, 903 S.W.2d 884, 886 (Tex.
App.--Houston [1st Dist.] 1995, no writ). 
AWe will not do
the job of the advocate.@  Happy Harbor, 903 S.W.2d at 886.  Appellants have not carried their burden on
this contention.








Finally, to the extent appellants are complaining that the
above referenced portions of the record were lost or destroyed, we apply a
similar analysis.  An appellant is
entitled to a new trial when a reporter=s record is
lost or destroyed if (1) appellant timely requested the record; (2) a
significant portion of the court reporter=s notes has
been lost or destroyed; (3) the lost portion is necessary to the appeal, and
the parties cannot agree on a complete reporter=s record.  Tex. R. App. P.
34.6(f).  We have reviewed the
complained-of portions of the record, and have concluded the nature of the
testimony or argument is apparent from the record.  We cannot conclude that a significant portion
of the reporter=s notes has
been lost or destroyed.  See id.
at 34.6(f)(2).  Furthermore, appellant
has not established how the lost portions, if any, are necessary to the
appeal.  See id. at 34.6(f)(3).

C.  Lost or Destroyed
Exhibits

Appellants next assert Ait appears that
the original exhibits presented to the court at the underlying proceedings were
lost and/or misplaced by the court.@  Appellants do not complain that the exhibits
were, in fact, lost or misplaced, and are, thus, unavailable for our review, as
is contemplated by appellate rule 34.6(f). 
See Tex. R. App. P. 34.6(f).  They argue only that markings on the exhibits
are missing, markings that indicated how the evidence was to be limited for our
review.








While there are no markings on the copies of the exhibits filed
in this appeal, we conclude, nonetheless, appellants have provided record
cites, or could have done so, limiting their evidence for our review.  Moreover, appellants must show this Court
that the missing markings on the exhibits in the appellate record are necessary
for the resolution of their issues on appeal. 
See id. at 34.6(f).  They
have not done so.  Neither have they
provided authority to support their argument, or offered record cites to
specific exhibits about which they complain. 
See Tex. R. App. P. 38.1(h).  Furthermore, to the extent appellants are
complaining that the exhibits do not contain notations indicating which
exhibits, or portions thereof, were admitted in the presence of the jury and
which were admitted only for the bill of exception, the reporter=s record
affords that information.

D.  Certification of
Record

Finally, appellants contend the statement of facts is
improperly certified by the three court reporters involved in its
completion.  Appellants complain the
court reporter=s certification
is not identical to the form set out in the appendix of the Texas Rules of
Appellate Procedure.  See Tex. R. App. P. Appendix, Order
Directing the Form of the Appellate Record in Civil Cases, ' B(1)(q).  However, 
by order of the Texas Supreme Court, section B(1)(q) provides only that
the certificate contain certain information in substantially the form outlined
in the appendix.  Id.

The court reporter certified the five volumes of the reporter=s record with
the following:

I, RONALD DUNAGAN, Certified Shorthand Reporter in and for the
State of Texas, with the assistance of Elizabeth Jimenez, hereby certify to the
following:

 

That the testimony given in the above-mentioned matter is a
true and accurate record of the proceedings.

 

I further certify that this transcription of the record of the
proceedings truly and correctly reflects the exhibits, if any, offered by the
respective parties.  

 








Although not verbatim, the court reporter=s certificate
in this case is in substantial compliance with the suggested language found in
the appendix of the appellate rules, that the Aforegoing contains a true and correct
transcription of all portions of evidence and other proceedings . . . all of
which occurred in open court or in chambers and were reported by me.@  Id.

Appellants also argue the record is not properly certified
because court reporter Catalina Reyes informed this Court the record could not
be completed.  However, at a show cause
hearing to determine why the original court reporter, Elizabeth Jimenez, should
not be held in contempt for failure to file the reporter=s record, Reyes
offered her opinion that Jimenez should be able to provide assistance for those
portions that were not transcribed.  In
our July 13, 2000, order, we directed the trial court to hold a hearing to
determine whether the record could be completed with Jimenez=s assistance,
and Ato take all
steps necessary in order to secure a complete reporter=s record.@  In compliance with the July 13 order, the
trial court appointed Dunagan to complete the record, with assistance from Jimenez.  On August 10, 2000, a complete and certified
reporter=s record was
filed with the clerk of this Court.

Appellants= first point of
error is overruled.

III.  Directed Verdict

By their second and fifth points of error, appellants contend
the trial court erred in (1) granting appellees= motions for directed verdict, and (2)
ruling appellants could not recover as a matter of law.








A.  Standard of Review

A directed or instructed verdict is proper when: (1) a
specifically indicated defect in the opponent's pleadings makes it insufficient
to support a judgment; (2) the evidence conclusively proves a fact that
establishes a party's right to judgment as a matter of law; or (3) the evidence
offered on a cause of action is insufficient to raise an issue of fact.  Encina P'ship v. CORENergy, L.L.C., 50
S.W.3d 66, 68 (Tex. App.BCorpus Christi
2001, pet. denied).  When reviewing a
directed verdict, we consider all the evidence in the light most favorable to
the party against whom the verdict was rendered and disregard all evidence and
inferences to the contrary.  Qantel
Bus. Sys. v. Custom Controls, 761 S.W.2d 302, 303-04 (Tex. 1988); Encina
P'ship, 50 S.W.3d at 68.  If there is
any evidence of probative value which raises a material fact, the judgment must
be reversed and the case remanded for the jury=s determination on that issue.  Qantel Bus. Sys., 761 S.W.2d at
304.  AWhen no evidence of probative force on an
ultimate fact element exists, the trial court has the duty to instruct the
verdict.A  Encina P'ship, 50 S.W.3d at 68.

B.  Breach of Contract








To recover for breach of contract, one must show:  1) the existence of a valid contract; 2)
performance or tendered performance by the plaintiff; 3) breach of the contract
by the defendant; and 4) damages to the plaintiff resulting from the
breach.  Adams v. H&H Meat Prods.,
Inc., 41 S.W.3d 762, 771 (Tex. App.BCorpus Christi
2001, no pet.).  Although appellees
acknowledge the existence of a contract between appellants and MBA for planning
and design services that included the design of a breakwater, we conclude the
evidence does not establish a breach of that contract.

After MBA withdrew as project architect, Dragutsky contracted
directly with appellants on the design of the breakwater.  Subsequently, Dragutsky modified the
design.  It was Dragutsky=s modified
design that was used by Bellingham Marine when it constructed the breakwater.  The MBA design was never built, and, having
never been built, no breach could have resulted.  Considering all the evidence in the light
most favorable to the party against whom the verdict was rendered and
disregarding all contrary evidence and inference, we conclude there is no
evidence of probative value which raises a material fact on the alleged breach
of the contract that existed between MBA and appellants.  See Qantel, 761 S.W.2d at 303-04; Encina
P'ship, 50 S.W.3d at 68.  Thus, the
third element of this cause of action cannot be satisfied.  See Adams, 41 S.W.3d at 771.  Furthermore, the evidence fails to establish
the existence of a valid contract between appellants and the remaining
appellees.  Therefore, the first element of
this claim cannot be satisfied as to the remaining appellees.  See id.   Because no evidence of probative force on
ultimate fact elements of appellants= breach of
contract cause of action exists, the trial court had a duty to instruct the verdict
in favor of each appellee on this claim. 
Encina P'ship, 50 S.W.3d at 68.

C.  Negligence








In their petition, appellants asserted appellees failed to Ause the degree
of care that architects and engineers of ordinary knowledge and skill@ would use
under the same or similar circumstances. 
Proof of such professional negligence requires that a professional
similarly licensed offer testimony that the conduct was beneath the standard of
care in the profession and that this breach of care was the proximate cause of
appellants= damages.  See Parkway Co. v. Woodruff, 901
S.W.2d 434, 445 (Tex. 1995) (citing Parkway v. Woodruff, 857 S.W.2d 903,
919 (Tex. App.BHouston [1st
Dist.] 1993), aff=d as modified, 901 S.W.2d
434 (Tex. 1995); Prellwitz v. Cromwell, Truemer, Levy, Parker and Woodsmale,
Inc., 802 S.W.2d 316, 317-18 (Tex. App.BDallas 1990, no writ) (court affirmed
directed verdict in favor of engineer and architect where expert testimony was
excluded because timely designated witnesses were unqualified).

In 1989, appellees MBA, Burkhart, Blum, and Valcon requested,
by interrogatory, that appellants provide them with the identity of their
experts.  Appellee Espey Huston requested
the same information in 1993.  Because
appellants did not disclose the requested information until after the trial
began, the trial court entered an order prohibiting appellants from offering
expert testimony.  Thus, appellants
presented no expert testimony to establish the professional standard of care,
any breach of that professional standard, or causation between any such breach
by appellees and appellants= damages.

To avoid a
directed verdict, [the plaintiff] had the burden to establish a prima facie case
of professional negligence against [the engineer] through competent expert
testimony.  Because the record contains
no expert testimony of the applicable engineering standard of care on the basis
of which a breach of that standard could have been found, and further, because
there was no expert testimony of such a breach, the directed verdict was
proper. 








Parkway, 857 S.W.2d at
919-20 (citations omitted).  Affirming
the Houston Court, the supreme court summarily wrote:

Regarding
[plaintiff=s] point of
error challenging the directed verdict on its claims against the engineers, we
agree with the court of appeals that there was no expert testimony of the
applicable standard of care or any basis for finding a breach of that standard.  Accordingly, we affirm the court of appeals= judgment for
the engineers.

 

Parkway, 901 S.W.2d at
445 (citations omitted).  We conclude the
absence of evidence on these mandatory elements of proof by expert witnesses
necessitated entry of directed verdicts for all appellees on appellants= negligence
cause of action.  See Encina P'ship,
50 S.W.3d at 68.

D.  DTPA Claim








Appellants also pleaded appellees violated the DTPA by allegedly
making misrepresentations to them.  See
Tex. Bus. & Com. Code Ann. '' 17.41-.63
(Vernon 1987 & Supp. 2002).  The
elements of a DTPA action are (1) the plaintiff is a consumer, (2) the
defendant engaged in false, misleading, or deceptive acts, and (3) these acts
constituted a producing cause of the consumer's damage.  Doe v. Boys Clubs of Greater Dallas,
907 S.W.2d 472, 478 (Tex. 1995); see Tex.
Bus. & Com. Code Ann. ' 17.50(a)(1)
(Vernon Supp. 2002) (consumer may maintain action where use of false,
misleading, or deceptive act or practice constitutes producing cause of
economic damage); see also Tex.
Bus. & Com. Code Ann. ' 17.46(a)
(Vernon Supp. 2002) (false, misleading, or deceptive acts or practices in
conduct of any trade or commerce are unlawful). 
False, misleading, or deceptive acts or practices include, inter alia,
Acausing
confusion or misunderstanding as to the source, sponsorship, approval, or
certification of goods or services.@  Tex.
Bus. & Com. Code Ann. ' 17.46(a)(2)
(Vernon Supp. 2002).          Appellants
specifically contend appellees misrepresented that the breakwater which they
constructed was constructed in a good and workmanlike manner.  However, appellees did not construct or
supervise the construction of the breakwater. It was constructed by Bellingham
Marine.  Thus, no evidence of probative
force exists on the misrepresentation or the producing cause elements of
appellants= claim that
appellees misrepresented aspects of the construction of the breakwater.  Encina P'ship, 50 S.W.3d at 68.

Appellants also contend appellees misrepresented their ability
to design the breakwater in question. 
Appellants assert that the following testimony supports their claim of
misrepresentation.  Palmer testified Blum
told him MBA could do a Aturnkey job@ on the
project; represented that the personnel and expertise would be provided through
MBA; and never told him that this was MBA=s first marina
project and Dragutsky=s first
breakwater design.  Without determining
whether appellees misrepresented their ability to design the breakwater, however,
the evidence does not establish how the misrepresentations, if any, were the
producing cause of appellants= injuries.  See Doe, 907 S.W.2d at 478.  Therefore, considering the evidence in the
light most favorable to appellants and disregarding all evidence and inferences
to the contrary, we conclude this evidence is insufficient to raise an issue of
fact on the producing cause element of this allegation of
misrepresentation.  Encina P'ship,
50 S.W.3d at 68.  








Accordingly, the court did not err in granting directed
verdicts on appellants= DTPA
claim.  Id.

E.  Breach of Warranty

Appellants also contend appellees breached certain express and
implied warranties under the Texas Uniform Commercial Code (Texas UCC).  See Tex.
Bus. & Comm. Code Ann.  '' 2.313-.315,
2.714-.715 (Vernon 1994).  However, the
Texas UCC is not applicable in this case because it applies only to the sale of
goods.  Id. ' 2.102.  By definition, a Agood@ is something
that is both tangible and movable at the time of the transaction.  Id. ' 2.105. 
The breakwater was not movable; it was to be a permanent improvement to
the real estate.  Furthermore, the Texas
UCC does not apply to the rendition of services.  Id. ' 2.102; see Montgomery Ward & Co.
v. Dalton, 665 S.W.2d 507, 511 (Tex. App.BEl Paso 1983, no writ) (a contract which
calls only for the rendition of personal services is not subject to the
act).  To determine whether a transaction
is a sale of goods, courts consider whether the essence or dominant factor of
the transaction is a sale of goods or services. Montgomery Ward, 665
S.W.2d at 511.  Here, appellants= complaint
against appellees goes to the design of the breakwater, not the construction of
the breakwater or the provisions of parts thereof.  Therefore, we conclude this transaction is
predominantly of sales of services, and is not subject to the Texas UCC.  See id.  The court did not err in directing verdicts
on appellants= breach of
warranty cause of action.

 








F.  Strict Liability

Strict liability in tort as defined by section 402A of the
Restatement (Second) of Torts applies to products that have been put in the
stream of commerce.  Hanselka v.
Lummus Crest, Inc., 800 S.W.2d 665, 666 (Tex. App.BCorpus Christi
1990, no writ).  AThe stream of
commerce includes the manufacture of the object and its distribution, including
the activities of retailers.@  Davis v. Gibson Prod. Co., 505 S.W.2d
682, 691 (Tex. Civ. App.BSan Antonio
1973, writ ref'd n.r.e.).  Because the
breakwater was not put in the stream of commerce, strict liability in tort does
not apply.  Rather, this case is about
the design of a breakwater to which we apply principles of ordinary negligence.  Hanselka, 800 S.W.2d at 665.  The court did not err in granting appellees= motions for
directed verdict on this claim.

Accordingly, because we conclude there was no evidence to
support at least one element of each cause of action, the trial court did not
abuse its discretion in granting appellees= motions for
directed verdict, and ruling appellants could not recover as a matter of law on
their claims.  We overrule appellants= second and
fifth points of error.

IV.  Admission of Answers
to Interrogatories








By point of error three, appellants contend the trial court
erred in refusing to allow Dragutsky=s answers to
interrogatories to be read into the record. 
However, interrogatories may be used only against the responding
party.  Tex.
R. Civ. P. 197.3.  Dragutsky
settled prior to trial and was not a party at the time appellants attempted to
offer his answers to interrogatories. 
Therefore, Dragutsky=s answers were
not admissible against the remaining appellees. 
Id.  

Appellants also sought the admission of two interrogatory
answers provided by Burkhart and MBA. 
However, even had these answers been admitted, they would not have
provided evidence necessary to overcome the granting of Burkhart=s and MBA=s motions for
directed verdict.  The answers were
denials of liability and a suggestion that Bellingham Marine, a one-time
defendant in this case, was negligent. 
Therefore, error, if any, was harmless. 
Tex. R. App. P. 44.1.  Appellants= third point of error is overruled.

V.  Exclusion of Evidence

By their fourth point, appellants challenge the trial court=s exclusion of
evidence in this case.  Appellants
perfected a bill of exception to show what the evidence would have been, had it
been admitted by the court.  Tex. R. App. P. 33.2.  The evidence included transcripts of
depositions with exhibits, correspondence written or received by the parties,
and reports prepared by various appellees.








Appellants contend the trial court erred by not allowing them
to present evidence and lay opinions about that evidence.  Appellants also complain the court erred in
preventing the admission of evidence as excited utterances, present sense
impression, statements against interest, and judicial admissions.  However, based on our review of the record,
including the documents attached to appellants= bill of exception, we find nothing that
would constitute evidence necessary to provide the missing elements discussed
in points of error two and five above, evidence necessary to overcome appellees= motions for
directed verdict.

There is no evidence to establish the existence of a contract
between appellants and Valcon, Burkhart, Blum, or Espey Huston.  Neither does the evidence establish a breach
of contract by MBA.  To the contrary, the
excluded evidence establishes the breakwater was not intended or designed to
protect the harbor in tropical storm or hurricane conditions.  Further, the evidence offered by appellants
does not establish a standard of care, breach of that standard, or a proximate
cause for professional negligence, testimony that must be provided through
expert opinion in this case.  Neither
does the testimony establish the producing cause element of appellants= DTPA
misrepresentation claims.   Therefore,
had the trial court admitted the evidence about which appellants complain, and
the lay opinions related to that evidence, directed verdicts would still have
been proper.  Therefore, error, if any,
was harmless.  See Tex. R. App. P. 44.1 (we will reverse
only when error complained of probably caused rendition of improper judgment or
prevented appellant from properly presenting case to appellate court).








Appellants also argue they were prevented from asking Palmer
and other witnesses even the Asimplest of
questions.@  However, nothing has been preserved for our
review on this contention because appellants did not make a record of what the
testimony would have been had the questions been posed to the witnesses.  See Navarro v. State, 863 S.W.2d 191,
199 (Tex. App.BAustin 1993),
pet. ref=d, 891 S.W.2d
648 (Tex. Crim. App. 1994) (because appellant failed to perfect bill of
exception to show what the answers would have been to questions propounded by
appellant=s counsel,
nothing is presented for review); see also Tex. R. App. P. 33.2.

Appellants= point of error
four is overruled.

VI.  1629 Service
Corporation

By their sixth point of error, appellants contend the trial
court erred in preventing expert testimony as to appellant 1629 Service
Corporation (Corporation).[9]  Appellants assert the Corporation was not
served with an interrogatory requesting the identification of experts, and,
therefore, was not subject to the striking of expert witnesses.  However, on November 17, 1993, Espey Huston
served its first set of interrogatories[10]
on A1629 Service
Corporation, Individually and as Managing Partner on Behalf of Queen Isabella
Development Joint Venture.@  Interrogatory number 3 included the following
request:

Please identify
all persons whom you may call as expert witnesses at the trial of this case, or
whose work product has been reviewed by or forms the basis either in whole or
part of the opinions of an expert who is to be called as a witness, and with
respect to each please state the subject matter of the expected testimony, the
expert=s mental
impressions and opinions about which you expect him or her to testify, the
facts and circumstances which relate to, or on which the expert bases, his or
her opinion. . . .

 








The
Corporation, through its attorneys, filed and served its answers to Espey
Huston=s
interrogatories on January 10, 1994. 
Making no objection to interrogatory number 3, it responded, ANo experts have
been designated by this Plaintiff at this time.@ 
The Corporation did not supplement or amend this response.  It did not disclose the identity of experts
until after the trial began.  

Because the Corporation was served with interrogatories requesting
the identification of its experts and did not respond until after the trial
began, it was subject to having its expert witnesses struck.  See Tex.
R. Civ. P. 193.6(a)(1) (formerly rule 215.5); Smith v. Southwest Feed
Yards, 835 S.W.2d 89, 95-96 (Tex. 1992); Alvarado v. Farah Mfg. Co.,
830 S.W.2d 911, 914 (Tex. 1992).  The
court did not err when it entered its order prohibiting the Corporation from
offering expert testimony.  Appellants= sixth point of
error is overruled.

The
judgment of the trial court is affirmed.                                                                       

NELDA
V. RODRIGUEZ

Justice

Publish.

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed

this 1st day of
August, 2002.

 











[1]MBA
was also known as Max Burkhart & Associates.  Max Burkhart and
Michael J. Blum were partners in MBA.





[2]Appellee
Valcon, Inc., submitted a bid to be the general contractor on the project, but
was not selected.  Burkhart is an
officer, director, and shareholder of Valcon.





[3]A
bathymetric study develops a contour map of the ocean floor, as of the date of
the study, in the immediate area of the site.





[4]A
wave-climate/attenuation study predicts Aunder
a set of conditions what kind of waves might be expected@
at different wind velocities and water depths.





[5]Dragutsky,
a defendant in this case, settled prior to trial, and is not a party to this
appeal.





[6]During
trial, appellants advised the court they were pursuing Espey Huston strictly on
a negligence theory.  Thus, the causes of
action relevant to Espey Huston are negligence and strict liability.  For simplicity, however, we will refer to
appellees collectively throughout the opinion.





[7]Appellants
dispute the accuracy of the reporter=s
record, not the clerk=s record.





[8]In
Tanguma v. State, 47 S.W.3d 663, 671 (Tex. App.BCorpus
Christi 2001, pet. ref=d), we
concluded there was no valid reason for holding rule 13.1 void, and
respectfully declined to follow Polasek. 
Id.





[9]Appellants
do not challenge the trial court=s
ruling excluding expert testimony as to the remaining appellants.





[10]The
remaining appellees made similar requests of the Corporation in 1989.