**MONTGOMERY WARD & COMPANY, INC., Appellant,**

v.

**Douglas T. DALTON, et al., Appellees.**

**No. 7010.**

Court of Appeals of Texas, El Paso.

Nov. 23, 1983.

Rehearing Denied Jan. 18, 1984.

Robert E. Kennedy, Jess Whittenton, Jr., El Paso, for appellant.

Michael C. Crowley, El Paso, for appellees.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

OPINION

WARD, Justice.

The Defendant appeals from a money judgment in the Plaintiffs' favor in their action brought for damages from an alleged breach of warranty arising under the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. sec. 17.50(a)(2). Trial was to a jury and resulted in a judgment against Defendant for damages of $3,500.00, trebled to an amount of $10,-500.00 plus attorney's fees. We affirm.

On November 11, 1974, the Plaintiffs, Mr. and Mrs. Douglas Dalton, entered into a written contract with the Defendant Montgomery Ward & Company, Inc., to install roofing on their home. On the front page of the contract under a space marked specifications, there is a hand written description of the materials to be used and work to be performed, after which appears in handwriting the following: "20 yr. Guarantee—9 yrs. all labor & materials, 11 yrs. prorated 1/240 per Mo. Transferrable."

Among printed contract terms on the back of the instrument are the following:

If this contract includes installation, Wards will, for a period of one year from date of installation ... adjust such parts as may require adjustment and repair any work or replace and install any parts found to be defective in material or workmanship.

. . . . .

This warranty is in lieu of all warranties expressed, implied or statutory, except any special, printed warranty which may be enclosed with individual pieces of equipment. In no event shall Wards' liability for damages whether under warranty or otherwise, exceed the cost of repair or replacement of defective materials or workmanship.

Thereafter, the roof was installed and the Plaintiffs paid the agreed amount.

The Plaintiffs' version of their problem was that with every significant rain which occurred after the roof was installed and through the years 1975, 1976 and 1977, leaks appeared. The Plaintiffs called the Defendant on eight to ten occasions complaining of leaks in the roof and on each occasion the Defendant responded by making repairs. It was the Plaintiffs' testimony that the damage caused by the leakage was not localized; that water was present in the shriveled plywood sheeting which covered the house; and this deterioration from the leakage occurred throughout the roof. The Plaintiffs' testimony was to the effect that the source of the problem with the roof was a failure of the Defendant to remove the old shingles before installing the new shingles, and that the Defendant's installation of the new roofing over the old shingles was not an accepted practice in El Paso County. In any event, the repair attempts were not effective, and the present suit was filed in August, 1978, this

being a week following a rain which caused other serious leakage throughout the Plaintiffs' home.

The Plaintiffs' theory on which recovery was attempted was that the Defendant had breached Section 17.50(a)(2) of the act in that the Plaintiffs as consumers could recover for breach of an express or implied warranty. By its answers to the first special issue submitted, the jury determined that the Defendant made an express or implied warranty to the Plaintiffs that the roofing work to be performed would be free from defects. In connection with the first issue, the jury was instructed as follows:

> The term *express warranty* means "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain that the goods shall conform to the affirmation or promise."
> The term *implied warranty* means "that the goods or product be fit for the ordinary purpose for which they were intended."

By its answer to the second special issue, the jury determined that the roof in question as installed by the Defendant was defective. In connection with this issue, the jury was instructed that "defect" or "defective" means that the roof was constructed below accepted standards in the roofing industry so as to make the roof unfit for its intended purpose on November 30, 1974. By its answer to the third issue, the jury found that the Defendant failed to repair any known defects in the roof within a reasonable time; and to the fourth special issue, that the sum of $3,500.00 would fairly and reasonably compensate the Plaintiffs for their damages. The balance of the issues dealt with the Plaintiffs' attorney's fees.

 The Defendant's first point of error is that the trial court erred in submitting Special Issue No. 1 because it was not supported by the pleadings. The first time that the Defendant objected to the pleadings defect was after the verdict had been reached, the objection being made in the

motion for judgment non obstante veredicto and in the amended motion for a new trial. The complaint was waived. Rules 67, 90 and 275, Tex.R.Civ.P.; 2 McDonald, Texas Civil Practice, sec. 5.18 (rev. 1982). While the pleadings are somewhat confusing, they do in broad terms refer to breaches of express and implied warranties as set out in sections of the Business and Commerce Code and that deceptive trade practices had been committed. No exception to the pleadings as required by Rules 90 and 91, Tex.R.Civ.P., were filed. The pleadings were sufficient to authorize the submission. The point is overruled.

 The Defendant next presents a series of six points complaining in various ways of the submission of Special Issue No. 1. We have determined that the contention is preserved and presented that the trial court erred in submitting Special Issue No. 1 as it relates to the inquiry that an implied warranty was made by the Defendant under the terms of Chapter 2 of Tex. Bus. & Com.Code Ann. Chapter 2 covers sales and contracts for sales of goods. Section 2.102; 2.105(a); 2.106(a). A contract which calls for the rendition of personal services is not subject to the act. 1 Anderson, U.C.C. sec. 2-102:5 (1981). The transaction before us is in the difficult intermediate area involving both the sale of materials and the rendition of installation services. Whether the Code can be applied to this type of transaction depends upon the "dominant factor" or the "essence of the transaction." The complaint made in this case related only to the manner of installing the shingles, the installation being handled solely by a subcontractor. The essence or dominant factor of the transaction before us was the furnishing of the labor to install the roof. This case in this particular is controlled by the holding in *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982). For that reason, the requirements of Chapter 2 (sales) of the Texas Business and Commerce Code did not apply to the transaction and the language in the contract excluded any implied warranty. The court should not have submitted the

inquiry contained in the first special issue regarding the making of an implied warranty to the Plaintiffs. There was no evidence in the case which justified the submission.

■ The Defendant's sixth point complains of the submission of Special Issue No. 1 on the ground that there was no evidence to support a finding that the goods (the shingles) used were not fit for the ordinary purpose for which they were intended, as the evidence conclusively established that the goods were fit for their intended purpose. We agree, as the Plaintiffs' evidence was all to the effect that the shingles were proper and that there was no defect present in them. The defect was in their installation.

■ The Defendant's third point complains that the trial court overruled its motion for judgment non obstante veredicto for the reason that the evidence allegedly conclusively established that the Defendant did not warrant the roofing work would be free from defects. We overrule the point. The Defendant contends that the limited printed warranty was performed by the Defendant since the Defendant repaired the roof whenever it was called upon to do so. This contention ignores the conflicting words in writing on the first page stating, "20 yr. Guarantee 9 yrs. all labor & materials, 11 yrs. prorated 1/240 per Mo. Transferrable." This written guarantee controls over the conflicting printed matter on the back of the instrument. The rule is well established that where the written and printed words and phrases in a contract are in conflict, the written words or phrases control. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957); *Raney v. Uvalde Producers Wool & Mohair Co., Inc.*, 571 S.W.2d 199 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); 14 Tex. Jur.3d Contracts sec. 214, p. 371 (1981). Not only that, the written words meant what they said. They were a guarantee that the labor and materials that went into the roofing would fully perform for at least the first nine years after installation. Under the evidence in this case, this absolute guarantee or express warranty was established by the Plaintiffs as a matter of law.

The fourth point is an insufficient evidence point complaining of the jury's findings that the Defendant made an express or implied warranty that the roofing work would be free from defects. As previously discussed, no implied warranty under the Code was present and the point would be sustained to that extent only but for the harmless error present in this case.

■ Point seven complains of the form of submitting Special Issue No. 1 for the reason that the issue inquires as to the "work" performed and the definitions inquire as to the goods only. Not only is the submission confusing, but the definitions were made under Code terms which were inapplicable. Again the point is sustainable but for the harmless error rule which is here controlling.

■ As pointed out above, errors were made in the submission of Special Issue No. 1 and in the evidentiary support to the issue as it was submitted, all due in the main to the erroneous supposition that the provisions of Chapter 2 of the Code applied. Regardless of that, we fail to see where any harm was sustained by the Defendant due to these errors. The evidence from all parties conclusively established that the Defendant made an unlimited warranty for at least nine years that the roofing installation would perform to the extent that it would protect the house from the elements. All errors that have been previously pointed out are held to be harmless and for that reason are overruled. Rule 434, Tex.R. Civ.P.

■ Point eight is a no evidence point complaining of the submission of Special Issue No. 2 and the jury's finding thereon that the roof was defective. After having considered only the evidence and the inferences arising therefrom which support the jury's finding, we overrule the point, as the evidence in this case certainly supported the finding that the roof as installed was defective since it leaked after every rain. The point is overruled.

▇ Points nine and ten present the no evidence and insufficient evidence contentions regarding the necessary support for the finding made by the jury in its answer to Special Issue No. 3 that the Defendant failed to repair any known defects on the roof within a reasonable time. The Plaintiffs' established that after the roof was installed that with every rain through the years 1975, 1976 and 1977, the roof continued to leak in spite of the efforts of the Defendant to remedy the unsatisfactory situation and that this suit was filed in August, 1978, a week following a rain which caused serious leakage throughout the Plaintiffs' home. The expert called by the Plaintiffs faulted the failure to remove the old shingles before installing the new roof and testified that the repairs made on the numerous occasions by the Defendant would not cure the problem until the roofing material was entirely removed and a new roof laid. The Defendant's evidence regarding this basic problem was to the contrary. Regardless of which version was accepted, the problem existed for almost four years before suit was filed. Having considered only the evidence and inferences therefrom which support the jury's finding, we overrule the legal insufficiency point and having considered all the evidence, we overrule the factual insufficiency point.

▇ Defendant's Points of Error Nos. Eleven through Thirteen complain of the failure of the trial court to make certain fact findings regarding the Defendant's prompt attempts to repair the defects, which were eventually prevented by the Plaintiffs. These points are without merit in this jury tried case and are overruled.

▇ The Defendant's fourteenth point of error asserts that the trial court erred in refusing to submit its requested special issue regarding producing cause. The Defendant correctly points out that the damages should be limited to those factually caused by the Defendant's conduct. D.T. P.A. sec. 17.50(a), as amended in 1979. What the Defendant overlooks is that his requested issue was but one of a series of three requested issues which together would have submitted a breach of warranty case based on the Defendant's theory that the printed limited warranties contained in the original contract were the only warranties involved. As the case was actually submitted, this one requested issue standing alone made no sense and the court was correct in refusing it. Further, the trial court in Special Issue No. 4 limited damages arising from the breach to those found to be "a result of the occurrence in question." This, together with the way Special Issue No. 2 was worded, in effect properly limited damages to those factually caused by the Defendant's breach of warranty. The fourteenth point of error is overruled.

▇ The Defendant's fifteenth point of error is that there was no evidence that the cost of repairs found by the jury in Special Issue No. 4 was reasonable and necessary. Plaintiffs' expert witness testified to the measure of damages, giving the reasons for his conclusion. The testimony was not controverted. We have carefully reviewed the testimony given by the Plaintiffs' expert. He stated that in his opinion at the time of his examination the cost of correctly installing a roof was in the sum of $4,900.00, which was a necessary expense, and that various items of expense including his profit were reasonable and necessary items. Having considered only the evidence and reasonable inferences arising therefrom supporting the finding, this no evidence point is overruled.

We have considered all of the Defendant's points and they are all overruled and the judgment of the trial court is affirmed.