G.J. PALMER, Jr., Individually and as Managing Partner on Behalf of Queen Isabella Development Joint Venture and Queen Isabella Development Joint Venture and 1629 Service Corporation, Appellants,

v.

ESPEY HUSTON & ASSOCIATES, INC., Max Burkhart, MBA Architecture Group, Michael J. Blum, and Valcon, Inc., Appellees.

No. 13–98–562–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 1, 2002.

Rehearing Overruled Sept. 19, 2002.

Adam Poncio, Law Offices of Cerda & Poncio, San Antonio, for Appellants.

Eric G. Behrens, Graves, Dougherty, Hearon & Moody, Austin, Terry D. Key, Jones, Galligan, Key & Lozano, L.L.P., Weslaco, William D. Peisen, Law Offices of

William D. Peisen, Edinburg, for Appellees.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

NELDA V. RODRIGUEZ, Justice.

Appellants, G.J. Palmer, Jr., individually and as managing partner on behalf of Queen Isabella Development Joint Venture and Queen Isabella Development Joint Venture and 1629 Service Corp., appeal from directed verdicts granting take nothing judgments in favor of appellees, Max Burkhart, MBA Architecture Group (MBA),[1] Michael J. Blum, Valcon, Inc.,[2] and Espey Huston & Associates, Inc. By six points of error, appellants complain that (1) the record is neither complete nor proper for this appeal, and (2) the trial court erred in granting appellees' motions for directed verdict, and in excluding evidence. We affirm.

## I. Background

This case involves the development of a marina in the Laguna Madre at Port Isabel, Texas. Queen Isabella Development Joint Venture (QID) hired MBA, an architectural, engineering and planning firm, to assist with the development of the marina. MBA worked on the planning and design phase of the project, including the design of a breakwater to create an artificial harbor by forming a barrier between waters outside the harbor and the interior of the marina.

MBA hired Espey Huston, an engineering firm, to (1) assist in handling permit applications with the Army Corps of Engineers; (2) conduct a bathymetric study;[3] (3) conduct a wave-attenuation or "wave-climate" study;[4] and (4) later, perform a written analysis of four different types of generic breakwaters, and how they typically would react to the wave-climate/attenuation study. Espey Huston's final report was completed in February 1985.

Because MBA did not provide in-house structural engineering services, it sub-contracted this work to Donald Dragutsky,[5] a licensed civil engineer. Prior to the completion of the breakwater design, MBA withdrew from the project. Thereafter, Dragutsky contracted with appellants, and modified the design prepared by Espey Huston. Dragutsky's design was a variation on a timber-wall breakwater depicted in Espey Huston's February 1985 report. Bellingham Marine constructed the breakwater. After construction was complete, a series of storms with prevailing northerly winds generated waves which overtopped or went under the breakwater and caused damage to the docks and boats inside the marina.

In 1988, appellants sued appellees for breach of contract, negligence, breach of warranty, strict liability, and violations of the Texas Deceptive Trade Practices and

---

1. MBA was also known as Max Burkhart & Associates. Max Burkhart and Michael J. Blum were partners in MBA.

2. Appellee Valcon, Inc., submitted a bid to be the general contractor on the project, but was not selected. Burkhart is an officer, director, and shareholder of Valcon.

3. A bathymetric study develops a contour map of the ocean floor, as of the date of the study, in the immediate area of the site.

4. A wave-climate/attenuation study predicts "under a set of conditions what kind of waves might be expected" at different wind velocities and water depths.

5. Dragutsky, a defendant in this case, settled prior to trial, and is not a party to this appeal.

Consumer Protection Act (DTPA).[6] Nine years later, in October 1997, the case went to trial. After appellants' case-in-chief, the trial court found "there [was] no evidence of probative force to support a recovery for Plaintiffs or to submit the case to a jury," and granted all appellees' motions for directed verdict.

## II. The Appellate Record

By their first point of error, appellants contend the appellate record is not complete or proper. They complain of (1) unrecorded bench conferences, (2) inaccuracies and missing testimony and arguments in the trial transcript, (3) lost or misplaced original exhibits, and (4) an improperly certified statement of facts.[7]

### A. Unrecorded Bench Conferences

Appellants complain of four unrecorded bench conferences. First, they contend the court reporter failed to record a bench conference that occurred during appellants' examination of Burkhart. Espey Huston objected to a question asked of Burkhart because it called for an opinion. An unrecorded bench conference followed. After the bench conference, appellants asked Burkhart the same question and he responded. Again, Espey Huston objected, this time on the basis that the response was non-responsive, hearsay, an opinion, and was not based on personal knowledge. The court sustained the objection and struck the response. Appellants did not challenge the ruling and no bench conference, recorded or unrecorded, followed.

The second unrecorded bench conference occurred after appellants offered their fourth exhibit into evidence. Imme-

diately following the unrecorded bench conference; outside the presence of the jury, the trial court and counsel had a lengthy discussion on exchanging exhibits, not interrupting the trial with objections regarding exhibits, and witnesses rendering expert testimony. This exchange was recorded and appears in the transcript of the trial proceeding.

The third unrecorded bench conference occurred during appellants' direct examination of Dragutsky, presented by way of deposition testimony. During the course of the testimony, after the trial court sustained appellee's objection that the testimony called for an opinion, appellants requested a bench conference. Following the bench conference, appellants continued presenting the deposition testimony of Dragutsky.

The last unrecorded bench conference occurred during appellants' case-in-chief; after they had offered excerpts of the deposition testimony of Paul Jensen, the vice-president of Espey Huston, passed the witness, and discussed exhibits entered. Appellant Palmer's trial counsel asked to approach the bench on another issue. After the bench conference, counsel called Palmer as the next witness.

■ A court reporter is required to make a full record of the proceedings unless excused by agreement of the parties. Tex. R. App. P. 13.1(a). No such agreement is apparent on the record. We recently held, in a criminal proceeding, the reporter's duty to record proceedings, including bench conferences that occur after the trial commences, is mandatory pursuant to appellate rule 13.1, and, thus, non-

---

6. During trial, appellants advised the court they were pursuing Espey Huston strictly on a negligence theory. Thus, the causes of action relevant to Espey Huston are negligence and strict liability. For simplicity, however, we

will refer to appellees collectively throughout the opinion.

7. Appellants dispute the accuracy of the reporter's record, not the clerk's record.

compliance is error. *See Tanguma v. State*, 47 S.W.3d 663, 667 (Tex.App.-Corpus Christi 2001, pet. ref'd); *but see Polasek v. State*, 16 S.W.3d 82, 88–89 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd) (rule 13.1(a) conflicts with section 52.046(a) of Texas Government Code, and is void).[8] Likewise, in this civil case, we conclude the court reporter's failure to record and transcribe the identified bench conferences that occurred after the trial commenced, without agreement of the parties, constitutes error. *See* TEX. R. APP. P. 13.1(a). However, a failure to record bench conferences does not automatically result in reversal.

■ We may not reverse unless the error complained of probably caused the rendition of an improper judgment or prevented an appellant from properly presenting the case to the appellate court. TEX. R. APP. P. 44.1; *cf. Tanguma*, 47 S.W.3d at 667 (pursuant to appellate rule 44.2, this Court analyzed whether error was reversible constitutional error or reversible non-constitutional error affecting substantial rights). Appellants asserted no consequences from the failure of the court reporter to record the four bench conferences. They do not claim the error probably caused rendition of improper judgments. *See* TEX. R. APP. P. 44.1(a)(1). Neither have they set out how the failure of the court reporter to record the four bench conferences prevented appellants from properly presenting their case to this Court. *See id.* at 44.1(a)(2). Furthermore, based on our review of the record, we cannot ascertain support for these arguments, had they been made. Accordingly, while we conclude the court reporter's failure to completely record the bench conferences at trial was error, such failure is not reversible. *See id.* at 44.1(a). We must, therefore, disregard the error. *See id.*

## B. Inaccurate/Lost Record

■ Appellants next argue the statement of facts is replete with inaccuracies which call the entire statement of facts into question. Appellants refer us to inaccuracies in eight lines of transcription in the five-volume reporter's record. Although the referenced portions of the record contain some unintelligible words or phrases, when reviewed in context, the meaning is understandable. Thus, we cannot conclude the entire statement of facts is called into question on this basis.

■ Appellants also generally refer us to other inaccuracies in the reporter's record, inaccuracies they contend are impossible to set out "without enormously exceeding the page limits of [their] brief." However, a party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place or places in the record where matters upon which they rely or of which they complain are shown. TEX. R. APP. P. 38.1(h); *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex.App.—Houston [1st Dist.] 1995, no writ). "We will not do the job of the advocate." *Happy Harbor*, 903 S.W.2d at 886. Appellants have not carried their burden on this contention.

■ Finally, to the extent appellants are complaining that the above referenced portions of the record were lost or destroyed, we apply a similar analysis. An appellant is entitled to a new trial when a reporter's record is lost or destroyed if (1) appellant timely requested the record; (2)

---

8. In *Tanguma v. State*, 47 S.W.3d 663, 671 (Tex.App.-Corpus Christi 2001, pet. ref'd), we concluded there was no valid reason for holding rule 13.1 void, and respectfully declined to follow *Polasek*. *Id.*

a significant portion of the court reporter's notes has been lost or destroyed; (3) the lost portion is necessary to the appeal, and the parties cannot agree on a complete reporter's record. TEX. R. APP. P. 34.6(f). We have reviewed the complained-of portions of the record, and have concluded the nature of the testimony or argument is apparent from the record. We cannot conclude that a significant portion of the reporter's notes has been lost or destroyed. *See id.* at 34.6(f)(2). Furthermore, appellant has not established how the lost portions, if any, are necessary to the appeal. *See id.* at 34.6(f)(3).

### C. Lost or Destroyed Exhibits

■ Appellants next assert "it appears that the original exhibits presented to the court at the underlying proceedings were lost and/or misplaced by the court." Appellants do not complain that the exhibits were, in fact, lost or misplaced, and are, thus, unavailable for our review, as is contemplated by appellate rule 34.6(f). *See* TEX. R. APP. P. 34.6(f). They argue only that markings on the exhibits are missing, markings that indicated how the evidence was to be limited for our review.

While there are no markings on the copies of the exhibits filed in this appeal, we conclude, nonetheless, appellants have provided record cites, or could have done so, limiting their evidence for our review. Moreover, appellants must show this Court that the missing markings on the exhibits in the appellate record are necessary for the resolution of their issues on appeal. *See id.* at 34.6(f). They have not done so. Neither have they provided authority to support their argument, or offered record cites to specific exhibits about which they complain. *See* TEX. R. APP. P. 38.1(h). Furthermore, to the extent appellants are complaining that the exhibits do not contain notations indicating which exhibits, or

portions thereof, were admitted in the presence of the jury and which were admitted only for the bill of exception, the reporter's record affords that information.

### D. Certification of Record

■ Finally, appellants contend the statement of facts is improperly certified by the three court reporters involved in its completion. Appellants complain the court reporter's certification is not identical to the form set out in the appendix of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. APPENDIX, Order Directing the Form of the Appellate Record in Civil Cases, § B(1)(q). However, by order of the Texas Supreme Court, section B(1)(q) provides only that the certificate contain certain information in substantially the form outlined in the appendix. *Id.*

The court reporter certified the five volumes of the reporter's record with the following:

I, RONALD DUNAGAN, Certified Shorthand Reporter in and for the State of Texas, with the assistance of Elizabeth Jimenez, hereby certify to the following:

That the testimony given in the above-mentioned matter is a true and accurate record of the proceedings.

I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

Although not verbatim, the court reporter's certificate in this case is in substantial compliance with the suggested language found in the appendix of the appellate rules, that the "foregoing contains a true and correct transcription of all portions of evidence and other proceedings ... all of which occurred in open court or in chambers and were reported by me." *Id.*

Appellants also argue the record is not properly certified because court reporter Catalina Reyes informed this Court the record could not be completed. However, at a show cause hearing to determine why the original court reporter, Elizabeth Jimenez, should not be held in contempt for failure to file the reporter's record, Reyes offered her opinion that Jimenez should be able to provide assistance for those portions that were not transcribed. In our July 13, 2000, order, we directed the trial court to hold a hearing to determine whether the record could be completed with Jimenez's assistance, and "to take all steps necessary in order to secure a complete reporter's record." In compliance with the July 13 order, the trial court appointed Dunagan to complete the record, with assistance from Jimenez. On August 10, 2000, a complete and certified reporter's record was filed with the clerk of this Court.

Appellants' first point of error is overruled.

### III. Directed Verdict

By their second and fifth points of error, appellants contend the trial court erred in (1) granting appellees' motions for directed verdict, and (2) ruling appellants could not recover as a matter of law.

### A. Standard of Review

■■■■■ A directed or instructed verdict is proper when: (1) a specifically indicated defect in the opponent's pleadings makes it insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Encina P'ship v. Corenergy, L.L.C.*, 50 S.W.3d 66, 68 (Tex.App.-Corpus Christi 2001, pet. denied). When reviewing a directed ver-

dict, we consider all the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all evidence and inferences to the contrary. *Qantel Bus. Sys. v. Custom Controls*, 761 S.W.2d 302, 303–04 (Tex. 1988); *Encina P'ship*, 50 S.W.3d at 68. If there is any evidence of probative value which raises a material fact, the judgment must be reversed and the case remanded for the jury's determination on that issue. *Qantel Bus. Sys.*, 761 S.W.2d at 304. "When no evidence of probative force on an ultimate fact element exists, the trial court has the duty to instruct the verdict." *Encina P'ship*, 50 S.W.3d at 68.

### B. Breach of Contract

■■■■ To recover for breach of contract, one must show: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex.App.-Corpus Christi 2001, no pet.). Although appellees acknowledge the existence of a contract between appellants and MBA for planning and design services that included the design of a breakwater, we conclude the evidence does not establish a breach of that contract.

■■■■ After MBA withdrew as project architect, Dragutsky contracted directly with appellants on the design of the breakwater. Subsequently, Dragutsky modified the design. It was Dragutsky's modified design that was used by Bellingham Marine when it constructed the breakwater. The MBA design was never built, and, having never been built, no breach could have resulted. Considering all the evidence in the light most favorable to the party against whom the verdict was rendered and disregarding all contrary evi-

dence and inference, we conclude there is no evidence of probative value which raises a material fact on the alleged breach of the contract that existed between MBA and appellants. *See Qantel,* 761 S.W.2d at 303–04; *Encina P'ship,* 50 S.W.3d at 68. Thus, the third element of this cause of action cannot be satisfied. *See Adams,* 41 S.W.3d at 771. Furthermore, the evidence fails to establish the existence of a valid contract between appellants and the remaining appellees. Therefore, the first element of this claim cannot be satisfied as to the remaining appellees. *See id.* Because no evidence of probative force on ultimate fact elements of appellants' breach of contract cause of action exists, the trial court had a duty to instruct the verdict in favor of each appellee on this claim. *Encina P'ship,* 50 S.W.3d at 68.

### C. Negligence

■■ In their petition, appellants asserted appellees failed to "use the degree of care that architects and engineers of ordinary knowledge and skill" would use under the same or similar circumstances. Proof of such professional negligence requires that a professional similarly licensed offer testimony that the conduct was beneath the standard of care in the profession and that this breach of care was the proximate cause of appellants' damages. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 445 (Tex.1995) (citing *Parkway v. Woodruff,* 857 S.W.2d 903, 919 (Tex.App.-Houston [1st Dist.] 1993), *aff'd as modified,* 901 S.W.2d 434 (Tex.1995)); *Prellwitz v. Cromwell, Truemper, Levy, Parker and Woodsmale, Inc.,* 802 S.W.2d 316, 317–18 (Tex.App.-Dallas 1990, no writ) (court affirmed directed verdict in favor of engineer and architect where expert testimony was excluded because timely designated witnesses were unqualified).

■■ In 1989, appellees MBA, Burkhart, Blüm, and Valcon requested, by interrogatory, that appellants provide them with the identity of their experts. Appellee Espey Huston requested the same information in 1993. Because appellants did not disclose the requested information until after the trial began, the trial court entered an order prohibiting appellants from offering expert testimony. Thus, appellants presented no expert testimony to establish the professional standard of care, any breach of that professional standard, or causation between any such breach by appellees and appellants' damages.

> To avoid a directed verdict, [the plaintiff] had the burden to establish a *prima facie* case of professional negligence against [the engineer] through competent expert testimony. Because the record contains no expert testimony of the applicable engineering standard of care on the basis of which a breach of that standard could have been found, and further, because there was no expert testimony of such a breach, the directed verdict was proper.

*Parkway,* 857 S.W.2d at 919–20 (citations omitted). Affirming the Houston Court, the supreme court summarily wrote:

> Regarding [plaintiff's] point of error challenging the directed verdict on its claims against the engineers, we agree with the court of appeals that there was no expert testimony of the applicable standard of care or any basis for finding a breach of that standard. Accordingly, we affirm the court of appeals' judgment for the engineers.

*Parkway,* 901 S.W.2d at 445 (citations omitted). We conclude the absence of evidence on these mandatory elements of proof by expert witnesses necessitated entry of directed verdicts for all appellees on appellants' negligence cause of action. *See Encina P'ship,* 50 S.W.3d at 68.

## D. DTPA Claim

██ Appellants also pleaded appellees violated the DTPA by allegedly making misrepresentations to them. *See* Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.2002). The elements of a DTPA action are (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damage. *Doe v. Boys Clubs of Greater Dallas,* 907 S.W.2d 472, 478 (Tex. 1995); *see* Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon Supp.2002) (consumer may maintain action where use of false, misleading, or deceptive act or practice constitutes producing cause of economic damage); *see also* Tex. Bus. & Com. Code Ann. § 17.46(a) (Vernon Supp.2002) (false, misleading, or deceptive acts or practices in conduct of any trade or commerce are unlawful). False, misleading, or deceptive acts or practices include, *inter alia,* "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Tex. Bus. & Com. Code Ann. § 17.46(b)(2) (Vernon Supp.2002).

██ Appellants specifically contend appellees misrepresented that the breakwater which they constructed was constructed in a good and workmanlike manner. However, appellees did not construct or supervise the construction of the breakwater. It was constructed by Bellingham Marine. Thus, no evidence of probative force exists on the misrepresentation or the producing cause elements of appellants' claim that appellees misrepresented aspects of the construction of the breakwater. *Encina P'ship,* 50 S.W.3d at 68.

██ Appellants also contend appellees misrepresented their ability to design the breakwater in question. Appellants assert that the following testimony supports their claim of misrepresentation. Palmer testi-fied Blum told him MBA could do a "turn-key job" on the project; represented that the personnel and expertise would be provided through MBA; and never told him that this was MBA's first marina project and Dragutsky's first breakwater design. Without determining whether appellees misrepresented their ability to design the breakwater, however, the evidence does not establish how the misrepresentations, if any, were the producing cause of appellants' injuries. *See Doe,* 907 S.W.2d at 478. Therefore, considering the evidence in the light most favorable to appellants and disregarding all evidence and inferences to the contrary, we conclude this evidence is insufficient to raise an issue of fact on the producing cause element of this allegation of misrepresentation. *Encina P'ship,* 50 S.W.3d at 68.

Accordingly, the court did not err in granting directed verdicts on appellants' DTPA claim. *Id.*

## E. Breach of Warranty

██ Appellants also contend appellees breached certain express and implied warranties under the Texas Uniform Commercial Code (Texas UCC). *See* Tex. Bus. & Com. Code Ann. §§ 2.313–.315, 2.714–.715 (Vernon 1994). However, the Texas UCC is not applicable in this case because it applies only to the sale of goods. *Id.* § 2.102. By definition, a "good" is something that is both tangible and movable at the time of the transaction. *Id.* § 2.105. The breakwater was not movable; it was to be a permanent improvement to the real estate. Furthermore, the Texas UCC does not apply to the rendition of services. *Id.* § 2.102; *see Montgomery Ward & Co. v. Dalton,* 665 S.W.2d 507, 511 (Tex.App.-El Paso 1983, no writ) (a contract which calls only for the rendition of personal services is not subject to the act). To determine whether a transaction is a sale

of goods, courts consider whether the essence or dominant factor of the transaction is a sale of goods or services. *Montgomery Ward*, 665 S.W.2d at 511. Here, appellants' complaint against appellees goes to the design of the breakwater, not the construction of the breakwater or the provisions of parts thereof. Therefore, we conclude this transaction is predominantly of sales of services, and is not subject to the Texas UCC. *See id.* The court did not err in directing verdicts on appellants' breach of warranty cause of action.

### F. Strict Liability

■ Strict liability in tort as defined by section 402A of the Restatement (Second) of Torts applies to products that have been put in the stream of commerce. *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665, 666 (Tex.App.-Corpus Christi 1990, no writ). "The stream of commerce includes the manufacture of the object and its distribution, including the activities of retailers." *Davis v. Gibson Prod. Co.*, 505 S.W.2d 682, 691 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.). Because the breakwater was not put in the stream of commerce, strict liability in tort does not apply. Rather, this case is about the design of a breakwater to which we apply principles of ordinary negligence. *Hanselka*, 800 S.W.2d at 665. The court did not err in granting appellees' motions for directed verdict on this claim.

Accordingly, because we conclude there was no evidence to support at least one element of each cause of action, the trial court did not abuse its discretion in granting appellees' motions for directed verdict, and ruling appellants could not recover as a matter of law on their claims. We overrule appellants' second and fifth points of error.

### IV. Admission of Answers to Interrogatories

■ By point of error three, appellants contend the trial court erred in refusing to allow Dragutsky's answers to interrogatories to be read into the record. However, interrogatories may be used only against the responding party. TEX. R. CIV. P. 197.3. Dragutsky settled prior to trial and was not a party at the time appellants attempted to offer his answers to interrogatories. Therefore, Dragutsky's answers were not admissible against the remaining appellees. *Id.*

■ Appellants also sought the admission of two interrogatory answers provided by Burkhart and MBA. However, even had these answers been admitted, they would not have provided evidence necessary to overcome the granting of Burkhart's and MBA's motions for directed verdict. The answers were denials of liability and a suggestion that Bellingham Marine, a one-time defendant in this case, was negligent. Therefore, error, if any, was harmless. TEX. R. APP. P. 44.1. Appellants' third point of error is overruled.

### V. Exclusion of Evidence

■ By their fourth point, appellants challenge the trial court's exclusion of evidence in this case. Appellants perfected a bill of exception to show what the evidence would have been, had it been admitted by the court. TEX. R. APP. P. 33.2. The evidence included transcripts of depositions with exhibits, correspondence written or received by the parties, and reports prepared by various appellees.

Appellants contend the trial court erred by not allowing them to present evidence and lay opinions about that evidence. Appellants also complain the court erred in preventing the admission of evidence as excited utterances, present sense impression, statements against interest, and judi-

cial admissions. However, based on our review of the record, including the documents attached to appellants' bill of exception, we find nothing that would constitute evidence necessary to provide the missing elements discussed in points of error two and five above, evidence necessary to overcome appellees' motions for directed verdict.

There is no evidence to establish the existence of a contract between appellants and Valcon, Burkhart, Blum, or Espey Huston. Neither does the evidence establish a breach of contract by MBA. To the contrary, the excluded evidence establishes the breakwater was not intended or designed to protect the harbor in tropical storm or hurricane conditions. Further, the evidence offered by appellants does not establish a standard of care, breach of that standard, or a proximate cause for professional negligence, testimony that must be provided through expert opinion in this case. Neither does the testimony establish the producing cause element of appellants' DTPA misrepresentation claims. Therefore, had the trial court admitted the evidence about which appellants complain, and the lay opinions related to that evidence, directed verdicts would still have been proper. Therefore, error, if any, was harmless. *See* Tex. R. App. P. 44.1 (we will reverse only when error complained of probably caused rendition of improper judgment or prevented appellant from properly presenting case to appellate court).

■ Appellants also argue they were prevented from asking Palmer and other witnesses even the "simplest of questions." However, nothing has been preserved for our review on this contention because ap-

pellants did not make a record of what the testimony would have been had the questions been posed to the witnesses. *See Navarro v. State*, 863 S.W.2d 191, 199 (Tex.App.-Austin 1993), pet. ref'd, 891 S.W.2d 648 (Tex.Crim.App.1994) (because appellant failed to perfect bill of exception to show what the answers would have been to questions propounded by appellant's counsel, nothing is presented for review); *see also* Tex. R. App. P. 33.2.

Appellants' point of error four is overruled.

### VI. 1629 Service Corporation

■ By their sixth point of error, appellants contend the trial court erred in preventing expert testimony as to appellant 1629 Service Corporation (Corporation).[9] Appellants assert the Corporation was not served with an interrogatory requesting the identification of experts, and, therefore, was not subject to the striking of expert witnesses. However, on November 17, 1993, Espey Huston served its first set of interrogatories[10] on "1629 Service Corporation, Individually and as Managing Partner on Behalf of Queen Isabella Development Joint Venture." Interrogatory number 3 included the following request:

> Please identify all persons whom you may call as expert witnesses at the trial of this case, or whose work product has been reviewed by or forms the basis either in whole or part of the opinions of an expert who is to be called as a witness, and with respect to each please state the subject matter of the expected testimony, the expert's mental impressions and opinions about which you expect him or her to testify, the facts and circumstances which relate to, or on

---

9. Appellants do not challenge the trial court's ruling excluding expert testimony as to the remaining appellants.

10. The remaining appellees made similar requests of the Corporation in 1989.

which the expert bases, his or her opinion....

The Corporation, through its attorneys, filed and served its answers to Espey Huston's interrogatories on January 10, 1994. Making no objection to interrogatory number 3, it responded, "No experts have been designated by this Plaintiff at this time." The Corporation did not supplement or amend this response. It did not disclose the identity of experts until after the trial began.

Because the Corporation was served with interrogatories requesting the identification of its experts and did not respond until after the trial began, it was subject to having its expert witnesses struck. *See* TEX. R. CIV. P. 193.6(a)(1) (formerly rule 215.5); *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 95–96 (Tex.1992); *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992). The court did not err when it entered its order prohibiting the Corporation from offering expert testimony. Appellants' sixth point of error is overruled.

The judgment of the trial court is affirmed.