NUMBER 13-06-237-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


___________________________________________________________________


IN THE INTEREST OF V.A., V.A., AND V.A., MINOR CHILDREN

___________________________________________________________________


On appeal from the 207th District Court


of Hays County, Texas.


__________________________________________________________________


MEMORANDUM OPINION



Before Justices Rodriguez, Garza and Benavides


Memorandum Opinion by Justice Rodriguez



 Appellee, the Texas Department of Protective and Regulatory Services (the
Department), brought suit against appellant, the biological mother of V.A.1, V.A.2,
and V.A.3, (1) daughters born in 1998, 2000, and 2002, (2) respectively, for termination
of her parent-child relationship under section 161.001(1)(D), (1)(E) and (1)(O) of the
Texas Family Code. See Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (Vernon Supp.
2006). In a jury trial following her de novo appeal to the trial court, (3) the jury found
one or more statutory grounds for termination and that termination of the parent-child
relationship was in the children's best interest. The trial court subsequently entered
an order terminating appellant's parental rights. See id. § 161.206 (Vernon Supp.
2006). By three issues, appellant challenges (1) the factual sufficiency of the evidence
to support the jury's verdict of termination and (2) the trial court's admission of
testimony that appellant claims is backdoor hearsay. We affirm.

I. Factual Sufficiency of the Evidence to Support Termination

 By two issues, appellant contends that the evidence is factually insufficient to
support the jury's verdict that the parent-child relationship between appellant and her
three children should be terminated. Parental rights can be terminated only by a
showing of clear and convincing evidence that the parent committed one or more of
the acts specifically named in the family code as grounds for termination and that
termination is in the child's best interest. See Tex. Fam. Code Ann. § 161.001
(Vernon Supp. 2006). Clear and convincing evidence is "the measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be proved." Id. § 101.007 (Vernon 2002).

A. Standard of Review

 The Texas Supreme Court recently set out the factual sufficiency standard of
review as follows:

 In reviewing termination findings for factual sufficiency, a court of
appeals must give due deference to a jury's factfindings, In re C.H., 89
S.W.3d 17, 27 (Tex. 2002), and should not supplant the jury's judgment
with its own, Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757,
761 (Tex. 2003). The court should inquire "whether the evidence is
such that a factfinder could reasonably form a firm belief or conviction
about the truth of the . . . allegations." In re C.H., 89 S.W.3d at 25. "If,
in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient." In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002).

In re H.R.M., 50 Tex. Sup. J. 192, 2006 Tex. LEXIS 1194, at *4 (Tex. Dec. 1, 2006)
(per curiam).B. Statutory Termination Grounds

 By her first issue, appellant contends that the evidence is factually insufficient
to support the jury's verdict for termination on the statutory termination grounds. The
Department alleged, and the jury found, that appellant had committed one of the
following acts that supported termination on section 161.001 statutory grounds:

 1. [Appellant] has knowingly placed or knowingly allowed the
children to remain in conditions or surroundings which endanger
the physical or emotional well-being of the children;


 2. [Appellant] has engaged in conduct or knowingly placed the
children with persons who engaged in conduct which endangers
the physical or emotional well-being of the children; [or]


 3. [Appellant] failed to comply with the provisions of a court order
that specifically established the actions necessary for the mother
to obtain the return of the children who have been in the
permanent or temporary managing conservatorship of the
Department of Protective and Regulatory Services for not less than
nine months as a result of the children's removal from the parent
under Chapter 262 for the abuse or neglect of the children.

See Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (Vernon Supp. 2006). "Only one
predicate finding under section 161.001(1) is necessary to support a judgment of
termination when there is also a finding that termination is in the child's best interest." 
In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). If the evidence is sufficient to support
the jury's verdict in only one of multiple pleaded statutory grounds, then the
termination will be upheld. See Hann v. Tex. Dep't of Protective and Regulatory
Servs., 969 S.W.2d 77, 81 (Tex. App.-El Paso 1998, writ denied) (holding that a
single provision listed in the laundry list is sufficient to satisfy the first element of
involuntary termination). We must, therefore, uphold the ruling in this case so long as
there is factually sufficient evidence to support termination on any one of the three
theories alleged.

1. Failure to Comply with Order

 In her first issue, appellant appears to argue that the evidence is factually
insufficient to support the jury's finding that she failed to comply with the provisions
of the court order establishing the actions necessary for appellant to obtain the return
of her children. See Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2006). It
is undisputed that the Department had temporary managing conservatorship of the
children on March 23, 2002. The case was initiated because of injury to V.A.3 when
she was one month old. (4) The evidence establishes that the children were removed
from appellant, in part, because of the continuing danger to the physical health or
safety of all three children. (5) The service plan enacted by the Department identified
several issues which needed to be addressed, including relationship problems, anger
management, unequal parenting responsibilities, unstable housing and employment,
and drug and alcohol usage. The absence of any identified perpetrator of V.A.3's
injuries was also a concern. The service plan required active participation by appellant
and her satisfactory demonstration of the ability to change her behavior in response
to the Department's concerns. Appellant signed the plan acknowledging that the plan

 requirements were necessary for her to meet the goal of family reunification and to
avoid termination.

 Cheryl Smith, a Department employee who supervised those responsible for the
removal of children from their homes, testified at trial. She characterized appellant's
participation as inadequate. First, appellant did not participate in education programs. 
She was referred to a parenting program, but did not substantiate her claims of
completion by providing the Department with a certificate of completion. There was
no evidence that appellant completed a second parenting course on protective
parenting. Smith also testified that she had no information that appellant had enrolled
in the domestic abuse class.

 Second, appellant did not consistently attend counseling sessions. Smith 
testified that appellant did not appear for her first two counseling sessions with Byron
Barnes, Ph.D., a psychologist. From August 2002 through April 2003, appellant
attended approximately fifty-nine percent of her sessions with Dr. Barnes; she
attended seventeen therapy sessions, but missed twelve sessions. Family counseling
sessions lasted only from August 2002 through December 2002 or January 2003 and
were discontinued because of appellant's absences. 

 Finally, appellant had unstable employment, unstable housing, and did not
maintain regular contact with the Department. At times, the Department found it
difficult to locate appellant.

 When asked why the goal was changed from reunification to
termination/adoption, Smith responded as follows:

 The Department had been involved with this family since March of '02. 
And in reviewing the progress that the parents had made, the concern
was that we have one year to make some permanency - for permanency
to be achieved for the children when they come into our care.


 We were already eight months into this case and the amount of
compliance we were getting was inconsistent, and we still didn't know
who had been the person who committed the abuse on [V.A.3], no one
had taken responsibility for that. So we still had a lot of risk factors in
this home and could not safely return these children to either one of the
parents at that point.


 A decision was made at that time that we needed to move toward a
different option for these children, and that decision was that we were
going to terminate parental rights and have the children be available for
adoption.

 According to testimony provided by Dr. Barnes who administered appellant's
psychological and diagnostic testing on April 25, 2002, the test results indicated that
appellant had a good intellectual capacity. Her scores on several personality
inventories raised concerns about agitation, irritability, difficulty in controlling herself
and in learning from experience, and a significant potential for acting out, for example,
physical fighting. Appellant also reflected depression and anxiety. Dr. Barnes made
a provisional diagnosis of borderline personality disorder which involves emotional
instability. Dr. Barnes also identified the fact that appellant was the primary care
giver, always having access to the children, as a significant risk factor for the children. 
He testified that, due to her missed appointments, he did not "believe risk was
reduced." While Dr. Barnes stated that he did not know if appellant was experiencing
adjustment disorder, depression, or if there was neglectful supervision at the time of
trial, personality disorder diagnosis tends to be "pretty stable" and will not change
without therapy.

 Linda Grajek, an investigator with Child Protective Services, testified that
appellant "put up effort, but not 100 percent." Grajek testified that she worked with
the future adoptive parents, the closest relatives who met all Department standards,
from November 2003 until October of 2005. Based on her review of reports during
that time and her participation in staffing meetings, she was of the opinion that return
of the children to appellant was not appropriate. According to Grajek, nothing had
changed at that time. Appellant continued to have unstable employment and housing,
did not complete "things," including counseling sessions. There was concern about
the stability of her relationships, and the Department was still unable to identify a
perpetrator of V.A.3's injuries. (6)

 Appellant completed a psychological evaluation by Matthew Ferrera, Ph.D., had
two drug tests, both of which were negative, and completed anger management. (7)
Appellant also testified that she participated in a parenting class, anger management,
family counseling, and meetings with Dr. Barnes once a week. She explained that the
family counseling ended because the children's father "took off." According to
appellant, the family counselor said that he could not see her anymore because it was
family counseling and she was the only one going. Appellant also testified that all
drug tests had come back negative and that she met with a drug counselor who told
her she did not need any drug classes or drug tests. Appellant testified that she had
been living in Austin at her aunt's house, but had recently moved into a four-bedroom
house in Travis County where she rented one room. Appellant had also had a fourth
child who, at the time of trial, was living with appellant's mother. Appellant testified
that she had been going to school with American Youth Works, had been employed
with a "temp" service in December, but was unemployed at the time of trial, and had
not been using drugs.

 After considering the entire record and giving due deference to the jury's
findings, we conclude that the evidence is such that a factfinder could reasonably form
a firm belief or conviction about the truth of the allegations; that appellant failed to
comply with a court order that established actions necessary for her to obtain the
return of the children. See Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp.
2006); In re H.R.M., 2006 Tex. LEXIS 1194, at *4. Thus, the evidence is factually
sufficient to support the trial court's findings that appellant committed acts
enumerated in section 161.001(1)(O) of the family code. Having concluded the
evidence is sufficient to support the jury's verdict for termination on this statutory
ground, we need not address the remaining pleaded statutory grounds. See In re A.V.,
113 S.W.3d at 362; Hann, 969 S.W.2d at 81. 

2. Public Policy

 In her first issue, appellant also contends that the evidence is factually
insufficient to establish that she failed to comply with the Department service plan
because the circumstances of this case demonstrate that, regardless of her
participation in the plan, the Department had an ulterior motive to terminate her
parental rights rather than to reunify the family. Appellant argues that this is against
public policy. She asserts that the proper focus in determining this issue should be on
whether the Department enacted and administered its plan consistent with the public
policy in favor of family reunification where possible and not on whether she failed to
comply with the court's requirements under section 160.001(1)(O).

 For the general proposition that public policy recognizes the promotion of family
reunification, appellant refers us to In re M.G.D., 108 S.W.3d 508, 522 (Tex.
App.-Houston [14th Dist.] 2003, no pet.) (Frost, J., concurring), and for the general
proposition that the Department's policy is to seek family reunification where feasible,
appellant cites Rodarte v. Cox, 828 S.W.2d 65, 78 (Tex. App.-Tyler 1991, writ
denied). While these cases support appellant's general contentions, In re M.G.D. also
provides that all termination suits are to be completed within a year. In re M.G.D.,
108 S.W.3d at 515 (citing Tex. Fam. Code Ann. § 263.401 (Vernon Supp. 2006)
(providing for dismissal of termination suits one year after the Department is appointed
as temporary managing conservator and also providing for a six-month extension if the
court finds it is in the best interest of the child)). Appellant complains that the
Department allegedly failed to request a continuance to allow her to complete the plan
requirements. The record, however, fails to establish that during an additional
improvement period appellant would have been any more diligent in pursuing
counseling, classes, and employment that she needed or that additional time would
have materially altered appellant's motivation. The Legislature has made it "clear that
courts cannot leave children in foster homes indefinitely while existing parents try to
improve themselves and their conditions." Id.

 Moreover, appellant's record citations do not support her public policy
argument-that the Department had an ulterior motive to terminate her parental rights
rather than to reunify the family. The record citations do, however, provide support
for appellant's compliance and her non-compliance with the plan. Therefore, without
more, appellant's public policy argument is neither persuasive nor adequately briefed. 

See Tex. R. App. P. 38.1(h) (providing that contentions must be supported by clear and
concise arguments with appropriate citations to authorities and to the record).

 Appellant's first issue is overruled.

C. Best Interest of the Children

 By her second issue, appellant contends that the evidence is factually
insufficient to support the jury's verdict that termination is in the best interest of the
children because four years had passed between the children's removal from
appellant's custody in 2002 and the trial in 2006, and the Department did not present
evidence that the criteria which prompted removal of the children still existed. 
Appellant argues that, in the absence of evidence showing appellant's unsuitability in
2006, the evidence did not clearly and convincingly support the jury's verdict on the
issue of the children's best interest. We disagree.

 "[A] fact finder may infer that past conduct endangering the well being of a
child may recur in the future if the child is returned to the parent." Williams v.
Williams, 150 S.W.3d 436, 451 (Tex. App.-Austin 2004, pet. denied) (citing In re
D.L.N., 958 S.W.2d 934, 941 (Tex. App.-Waco 1997, pet. denied), disapproved on
other grounds by In re J.F.C., 96 S.W.3d at 267 and In re C.H., 89 S.W.3d at 26; see
De Llano v. Moran, 160 Tex. 490, 333 S.W.2d 359, 361 (1960)); May v. May, 829
S.W.2d 373, 377 (Tex. App.-Corpus Christi 1992, writ denied). In this case, the
Department presented evidence establishing appellant's history of unstable housing,
unstable employment, unstable relationships, mental health issues, and drug and 
alcohol usage. There is also evidence that appellant had risk factors for abusive
behavior.

 From this evidence and from the evidence set out in the statutory grounds for
termination analysis above, see In re C.H., 89 S.W.3d at 28 (providing that evidence
that proves one or more statutory grounds for termination may also constitute
evidence illustrating that termination is in the child's best interest), the jury could have
determined that the identified risk factors established endangerment to the children's
well-being in the past and could have inferred that the risk factors would continue to
be present thus endangering the children's well-being in the future if the children are
returned to appellant. See Williams, 150 S.W.3d at 451; D.L.N., 958 S.W.2d at 934. 
From this evidence and that set out earlier, the jury could have also inferred that
appellant's past inability to appropriately care for her children as established by her
mental health issues and her unstable housing, employment, and relationships, is
indicative of the quality of care appellant is capable of providing any of the children in
the future. See D.O. v. Tex. Dep't of Human Servs., 851 S.W.2d 351, 356 (Tex.
App.-Austin 1993, no writ). Furthermore, considering appellant's drug and alcohol
use and her overdose on pain medications, the jury could have concluded that, in the
future, similar unsuitable conduct might occur. See id. Because there is evidence that
appellant's past actions were unsuitable, the jury could have inferred that similar
unsuitable conduct could recur in the future if the children are returned to appellant. 
See Williams, 150 S.W.3d at 451. Therefore, appellant's contention that the evidence
is factually insufficient because the Department did not present evidence that the
criteria which prompted removal of the children still existed at the time of trial is not
persuasive.

 Moreover, "[t]he Texas Supreme Court has compiled factors to consider when
determining the best interest of a child." In re J.I.T.P., 99 S.W.3d 841, 846 (Tex.
App.-Houston [14th Dist.] 2003, no pet.) (citations omitted). Nine non-exhaustive
factors set forth by the supreme court in Holley v. Adams, 544 S.W.2d 367, 372
(Tex. 1976), include the following: desires of the child; emotional and physical needs
of the child now and in the future; emotional and physical danger to the child now and
in the future; parenting abilities of the parties seeking custody; programs available to
assist these persons; plans for the children by parties seeking custody; stability of the
home or proposed placement; acts of omissions committed by the parent which may
indicate that the existing parent-child relationship is not a proper one; and any excuse
for the acts or omissions committed by the parent. Id. The absence of evidence about
some of these facts does not preclude a factfinder from reasonably forming a strong
conviction or belief that termination is in the child's best interest. In re C.H., 89
S.W.3d at 27; see In re D.M., 58 S.W.3d 801, 814 (Tex. App.-Fort Worth 2001, no
pet.) (explaining that the determination of best interest does not require proof of any
unique set of factors, nor does it limit proof to any specific factor).

 In light of the entire record and giving due deference to the jury, we conclude
that the evidence in this case is factually sufficient to support certain Holley factors,
including the children's emotional and physical needs now and in the future, the
emotional and physical danger to the children now and in the future, and the acts or
omissions of the parent which may indicate that the existing parent-child relationship
is not proper. See Holley, 544 S.W.2d at 372; In re H.R.M., 2006 Tex. LEXIS 1194,
at *4. Thus, we conclude that the Department presented enough evidence from which
the jury could reasonably have formed a firm conviction or belief that each child's best
interest warranted termination. See In re D.S.A., 113 S.W.3d 567, 574 (Tex.
App.-Amarillo 2003, no pet.). We overrule appellant's second issue.

II. Hearsay

 By her third issue, appellant complains that the trial court erred in admitting
backdoor hearsay testimony, implying she was using drugs at the time of the
investigation. She claims that the error was harmful because it was reasonably
calculated to influence the jury's decision with respect to its determination of the
children's best interest and to influence this Court's appellate review. See Tex. R. App.
P. 44.1(a). Appellant argues that the testimony related to a key material issue, that
being whether the parent is unsuitable. We disagree.

 Liz Torres, a Department investigator, testified that she had received a referral
regarding one of appellant's children. At trial, the Department attempted to introduce
evidence of a drug test which appellant had taken at Torres's request. The trial court
sustained appellant's objection to the admission of the test results on hearsay and
Daubert grounds. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590
(1993). The Department then sought to ask Torres, if, based on her investigation, she
had concerns about whether or not appellant was using drugs. The trial court
overruled appellant's objection that the question was a "backdoor" method of eliciting
information which had previously been excluded, and Torres answered the question
in the affirmative, stating that she had concerns about whether or not appellant was
using drugs. 

 At trial, however, in opening statements the Department announced that the
evidence would show that appellant was a troubled teenager who had problems with
marijuana, cocaine, and huffing inhalants. Without objection, the following testimony
was admitted:

 1. Caseworker Harris testified that appellant admitted to "huffing";


 2. Dr. Ferrara testified that appellant admitted that her boyfriend "Got
me into cocaine," and that she began using drugs at age thirteen,
including cocaine, and once overdosed on pain medication;


 3. Dr. Ferrara also testified that interim periods between drug use
increases hostility, e.g., detox, and that affects child rearing;


 4. Caseworker Smith testified that there was a concern about
appellant's drug and alcohol use as affecting her ability to provide
for her children; and


 5. Dr. Barnes testified that appellant admitted to "cocaine usage prior
to the pregnancy, and that there had been quite a lot of it, quite
a bit of it prior to the pregnancy . . . [and] [s]he reported that she
took an overdose of father's pills. . . ."


 Under rule 44.1, we must reverse a ruling where the error was reasonably
calculated to cause the rendition of an improper judgment or probably prevented
appellant from properly presenting the case to this Court. Tex. R. App. P. 44.1(a);
Palmer v. EspryHuston & Assocs., 84 S.W.3d 345, 351 (Tex. App.-Corpus Christi
2002, pet. denied). Torres's testimony is consistent with the above-referenced
opening statements and testimony regarding drug use. We cannot conclude, as
appellant suggests, that without Torres's testimony, the Department would not have
established that appellant was not suitable. Neither can we conclude that its
admission probably caused rendition of an improper judgment or probably prevented
appellant from properly presenting the case to this Court. See Tex. R. App. P. 44.1(a). 
Therefore, even if the question invited inadmissible hearsay and thus the trial court
erred in admitting Torres's testimony, we conclude there was no reversible error. We
overrule appellant's third issue.

III. Conclusion

 The judgment of the trial court is affirmed.

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 1st day of February, 2007.
1. Because the initials are the same for all three children, for purposes of this opinion, we will refer
to them from oldest to youngest as V.A.1, V.A.2, and V.A.3.
2. The year of V.A.3's birth is stated as 2002 throughout the record but as 2003 in the judgment. 
This discrepancy, however, does not affect the disposition of this appeal.
3. The Texas Family Code provides for an appeal to the referring court from an associate judge's
ruling. See Tex. Fam. Code Ann. § 201.015 (Vernon 2002).
4. Sabrina Harris, an investigator for the Department, investigated a report of possible physical
abuse to V.A.3. She observed significant bruising to V.A.3's upper arm, neck, cheek, behind her ear
and on the side of her head. V.A.3 also had a broken clavicle which Harris learned had likely occurred
within the preceding fourteen days. Harris testified that she suspected child abuse because the injuries
could not have been self-inflicted given the child's age. An examining physician testified that in addition
to the multiple bruises on her body, bruises from injuries that had occurred at different times, V.A.3 had
a pattern on her cheek consistent with a bite mark. It was his impression that the bruising, as well as
the break, resulted from non-accidental trauma.


Smith also testified that, except for the bite mark which appellant believed to have been inflicted by the
child's sister, both appellant and the child's biological father denied knowing how V.A.3 received her
injuries. According to Harris, appellant told her that she had not fully bathed or changed V.A.3's
clothing because of the intensely cold weather in the month following her birth, and because the baby
had a cold.


Appellant testified that she had not seen any bruising and only learned of V.A.3's injuries after she had
taken her to the hospital because of a high fever.
5. Although there was no report of injury to appellant's other daughters, ages 3 and 2 at the time
of the initial contact, Harris was concerned over their welfare, basing her concerns on the risk of injury
in light of V.A.3's injuries.
6. Grajek, foster care/adoption worker Anna Yost, and the intervenor with whom the children had
been placed, also testified about the appropriateness of the children's future placement. Grajek and Yost
opined that the intervenors were an appropriate placement option. Grajek also testified that termination
of appellant's parental rights was in the children's best interest.
7. Dr. Ferrera testified that, from his testing, he determined appellant evinced several risk factors
for possible abusive behavior, including her history of unstable relationships, unstable employment,
substance abuse problems, and her mental health. One referenced relationship involved a boyfriend who
beat her and involved her in drug abuse, driving her to attempt suicide. Dr. Ferrera explained that the
presence of risk factors dealt with a "probability" and would not prove that an individual would harm
a child. He opined, however, that appellant's relationships reflected that she would not be a good
provider as a parent, and that there was a "high probability" that violence inflicted against her could be
passed on against her children. 


Additionally, according to Dr. Ferrera, appellant's work history reflected that she had briefly worked in
fast food and that the longest job she had held was as a topless dancer. According to Dr. Ferrera,
appellant's lack of stable employment would create a likelihood of violence against her children, and,
further, the odds of parental abuse are increased among topless entertainers. Appellant's substance
abuse problems started with the use of marijuana at the age of thirteen. According to Dr. Ferrera, this
reflected that appellant handled stress in a maladaptive manner. He explained that drug usage increases
the probability of violence, both from the period of detoxification from drugs and from the fact that drug
usage generically increases the possibility of acting out violently. He admitted his evaluation of
appellant's substance abuse related to the period prior to the birth of her first child, and he did not
consider any substance abuse or lack thereof from the birth of her first child to the date of the report. 
Psychological testing reflected that appellant had a long history of depression and personality patterns
involving hostility and aggression. Finally, appellant lacked proper parenting skills. Positively, appellant
was in good physical health and lacked any conditions which would cause her to become agitated and
act out aggressively. Dr. Ferrera's evaluation was three years old at the time of trial. He admitted that
the basis of his evaluation, with the exception of appellant's personality disorder, could change over
time.