ACCEPTED
13-15-00095-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/30/2015 3:00:37 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00095-CV

In the Court of Appeals for the
Thirteenth District at
Corpus Christi/Edinburg

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/30/2015 3:00:37 PM
CECILE FOY GSANGER
Clerk

_____

Nadir N. Ali and Mumtaz Ali,

Appellants,

v.

Flessner Enterprises, Inc.,

Appellee.

_____

FROM THE 135TH JUDICIAL DISTRICT COURT
OF DEWITT COUNTY, TEXAS,
THE HONORABLE STEPHEN WILLIAMS, PRESIDING

_____

## APPELLEE'S BRIEF

_____

CYNTHIA T. SHEPPARD
SBN 20245500
LAW OFFICE OF CYNTHIA T. SHEPPARD
POST OFFICE 67
CUERO, TEXAS 77954
(361) 277-8539
(361) 277-8571 (FAX)
SHEPP04@MSN.COM
*ATTORNEY FOR APPELLEE*

In the Court of Appeals for the
Thirteenth District at
Corpus Christi/Edinburg

_____

Nadir N. Ali and Mumtaz Ali,

Appellants,

v.

Flessner Enterprises, Inc.,

Appellee.

_____

FROM THE 135TH JUDICIAL DISTRICT COURT
OF DEWITT COUNTY, TEXAS,
THE HONORABLE STEPHEN WILLIAMS, PRESIDING

_____

**APPELLEE'S BRIEF**

_____

TO THE HONORABLE JUSTICES OF THE THIRTEENTH COURT OF APPEALS:

Appellee Flessner Enterprises, Inc. files its brief, respectfully requesting that this Court affirm the judgment of the trial court entered December 3, 2014, in all respects.

# TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   *1.*   *The Evidence Fails to Show that the Construction Contract was*
         *Completed More than Four Years Before Suit was Filed.* . . . . 7

   *2.*   *The Law Does not Require a Contract for Services to be*
         *In Writing. Even if it Did the Parties' Contract was*
         *Fully Performed, Taking it Outside the Statute of Frauds..* . . 10

   *3.*   *The Evidence Supports the Trial Court's Award of Attorney Fees*
         *for Breach of Contract.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   *4.*   *The Trial Court was Not Required to File Ali's Requested*
         *Additional Findings Because They Were not Supported by the*
         *Evidence and Were Contrary to its Previous Findings and*
         *Conclusions. Moreover, No Harm Resulted from Such Failure.* 14

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cases:*                                      Page:

*Alexander & Polley Constuction Co. v. Spain,*
477 S.W.2d 301 (Tex. Civ. App. – Tyler 1972, no writ). . . . . . . . . . . . . . 8,9

*Buckeye Ret. Co. L.L.C. v. Bank of AM, N.A.*,
239 S.W.3d 394 (Tex. App. – Dallas 2007, no pet.). . . . . . . . . . . . . . 14

*Cherne Industires, Inc. v. Magallanes*,
763 S.W.2d 768 (Tex. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Los Fresnos v. Gonzales*,
830 S.W.2d 627 (Tex. App. – Corpus Christi 1992, no writ). . . . . . . . . . 15

*City of Mc Allen v. Ramirez*, 2013 Tex. App. LEXIS 8887, *76 (Tex. App – Corpus
Christi), *vacated on other grounds*, 3013 Tex. App. LEXIS 13785, *1 (Tex.
App. – Corpus Christi 2013, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dynergy, Inc. v. Yates*,
422 S.W.3d 638 (Tex. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Geotech Energy   Corp. v. Gulf State*,
788 S.W.2d 386 (Tex. App. – Houston [14th Dist.]1990, no writ). . . . . . . . 11

*Godde v. Wood*,
509 S.W.2d 435 (Tex. Civ. App. – Corpus Christi 1974, writ ref'd n.r.e).. 8

*G-W-L, Inc. v. Robichaux,*
643 S.W.2d 392 (Tex. 1982), *overruled on other grounds*, *Melody Home Mfg.
Co.v . Barnes*, 741 S.W.2d 349, 355 (Tex. 1987). . . . . . . . . . . . . . . . . . . . 12

*Hoffman v. Wall,*
602 S.W.2d 324 (Tex. Civ. App. – Texarkana 1980, writ ref'd n.r.e.). . . . . 7

*Intermedics, Inc. v. Grady*,
  683 S.W.2d 842 (Tex. App. – Houston [1st Dist.] 1984, pet. denied). . . . 7,8

*Metal Structures Corp v. Plains Textiles, Inc.*,
  470 S.W.2d 93 (Tex. Civ. App – Amarillo 1971, writ ref'd n.r.e.) . . . . . . . . 7

*Montgomery Ward & Co., Inc. v. Dalton,*
  665 S.W.2d 507 (Tex. App – El Paso 1983, no writ). . . . . . . . . . . . . . . . . 11

*Nicol v. Gonzales*,
  127 S.W.3d 390 (Tex. App. – Dallas 2004, no pet.). . . . . . . . . . . . . . . . . 11

*Westergren v. Nat. Property Holding, L.P.,*
  409 S.W.3d 110 (Tex. App. – Houston [14th Dist.] 2013, no pet. h.). . . . . 12

<u>*Statutes and Rules*</u>:

TEX. R. APP. P. 44.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. R. CIV. P. 94. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. BUS. & COM. CODE ANN. §2.201(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. CIV. PRAC. & REM. CODE ANN. §38.001. . . . . . . . . . . . . . . . . . . . . . . . . 13

# ISSUES PRESENTED

1. *The Evidence Fails to Show that the Construction Contract was Completed More than Four Years Before Suit was Filed.*

2. *The Law Does not Require a Contract for Services to be In Writing. Even if it Did, the Parties' Contract was Fully Performed, Taking it Out of the Statute of Frauds.*

3. *The Evidence Supports the Trial Court's Award of Attorney Fees for Breach of Contract.*

4. *The Trial Court was Not Required to File Ali's Requested Additional Findings Because they Were not Supported by the Evidence and Were Contrary to its Previous Findings and Conclusions. Moreover, No Harm Resulted from Such Failure.*

STATEMENT OF FACTS

Appellee objects to the fact statement set forth by Appellants in their brief. It is incomplete and fails to present the evidence in light of the trial court's judgment, as required under the proper standard of review. A proper review of the evidence is as follows:

........

Rodney Flessner is the President and owner of Flessner Enterprises, Inc. *(RR 6)* Sometime after August of 2009, Flessner was hired by Nadir and Mumtaz Ali to tear out the existing electrical in their Fast Trak Express convenience store in Cuero, which they had just purchased, and to do a complete electrical "redo." *(RR 6; 12; 49)* Flessner told the Alis that the labor alone would cost $3,000 a week, but they never discussed a total price or estimate. *(RR 17-18; 38; 43)*[1] The work involved checking to see what existing electrical was active and tear out what was not. *(RR 19-29; PX 2 [photos taken at the beginning of the job documenting what Flessner had to tear out and replace or repair]).* Flessner testified it would be impossible to give a price on a job like this without a physical set of plans or blueprints to know what he was expected to complete and hook up. *(RR 72)* Ali made several changes in the work

---

[1]Flessner and Ali had had disputes 10 to 15 years earlier over Ali's failure to pay Flessner's bills for similar work. *(RR 34)* Those disputes had been settled and were not involved in this job. *(RR 6-7)*

to be done as the job progressed.  *(RR 72-74)*

Once everything was safe and off, Flessner removed all of the loose conduits that were not needed and also wall and suspended ceiling, and other pieces of equipment that were there.  They wired the gas pumps , the outside lights, and the entire structure "100 percent," minus the original exterior service and the end concrete conduits.  They had to have someone come in and tear up some concrete where the conduits were bad.  It took more time and expense  than starting a brand new job from scratch, and there were no blueprints or plans of the job.  *(RR 12-14)*

Flessner would meet with Ali weekly when he came by the job and Ali would tell him what wanted done for the next week. *(RR 14)*  Flessner did everything he asked him to do.

At one point, Flessner was out so much money in equipment and labor costs that he had to take on other jobs, and was finally forced  stop the job. (*RR 38)* Flessner knew Ali was stretched financially waiting to get the store open and money coming in, but Flessner had had to take out a loan himself for $100,000 to keep afloat. *(RR 13-15)*

Ali called and asked to talk to Flessner, and they agreed to meet at Flessner's house. *(RR 16)* Ali told him he needed Flessner to work with him, to please give him the benefit of the doubt, and as a Christian man he was going to keep his word.  Ali

2

promised Flessner on his family's name that he wanted to get this job complete and start making income so he could get Flessner paid. He promised to pay Flessner in full. Flessner told Ali that at that time he was $120,000 into the job. *(RR 40; 44)*

Flessner then agreed to finish the job and did so. The invoice that Flessner prepared on March 30, 2009 was for $145,543.37, which allowed for $20,000 that Ali had already paid. *(PX 1[invoice]; RR 8-9; 57)* This included all of the materials and labor to complete the job, $50,045.64 for materials, $95,920.25 for labor, and $12,042.19 in sales tax, all of which was logged on a daily basis by the hours worked, by whom, and what materials were used. *(RR 8; 18; 43)*

Flessner dropped off a copy of the invoice at the Fast Trak store and also faxed a copy of the invoice to Ali's other store in Cuero. *(RR 31)* A copy was also faxed to a lawyer in town, Ray Reese. *(RR 46)* Flessner did not file any liens or send any demand letters. *(RR 46)* Ali told him on four or five different occasions that he was trying to get some money coming in so he could start paying him. *(RR 32; 45)*

Flessner kept a systematic record of the sales and service that he did in installing the electrical, which was all done and delivered in the regular course of business. *(RR 8-9; 17; PX 1)* The March 30th invoice was taken from daily logs Flessner kept on the job for hours worked. *(RR 37)* The work was done at the insistence of Ali, who promised and became liable to pay for it and did not.

Flessner did not finish the job until June of 2009. He continued to work at the location after March 16, 2009, the date of the last billing, changing out parts and "stuff" and rearranging panel amperage loads to balance some loads. He was there up through the 27th or 28th, and completed the materials, on the 29th. He then continued to do warranty work and punch list things until June of '09. Everything he did after March 16th was at no additional charge. *(RR 11)* The Alis sold the store in September of 2009 for $800,000. *(RR 48*; 70) Suit was filed on March 28, 2013.

Ali's testimony differed in some areas from Flessner's. He testified that Flessner told him the whole job would cost no more than $40 to $45,000 and that he would be reasonable with him "this time." *(RR 51; 76)* He claimed never to have seen the final invoice until suit was filed in 2013. *(RR 52-54)* He said he met Flessner on the street in 2012, that they discussed the amount of the bill, and that Flessner suggested working it out without attorneys and with Ali making payments. *(RR 55)*

Ali testified when he came to town he never saw Flessner's crew working early in the mornings or on Saturday or Sunday, as reflected in the invoice. *(RR 57; 61)* He also testified that four or five months after the store opened in August of 2008, he went to talk to Flessner about what he still owed him. *(RR 58-59)* Flessner said he hadn't finished the paperwork and would get him a bill. Ali denied ever being told

4

labor would be at least $3,000 a week. *(RR 59)* He also denied ever pleading with Flessner to finish the job. *(RR 60)*

Ali admitted that the work he wanted was done, but maintained that he didn't owe the money. *(RR 66)* He testified that after the store opened in August of '09 he called and asked Flessner to do some work when a breaker "flipped." *(RR 68)*

## SUMMARY OF THE ARGUMENT

This is a simple breach of contract case arising from an electrical construction contract that was tried to the court. Appellee Flessner presented sufficient evidence to support the trial court's judgment awarding him damages as a result of Appellant's breach of that contract for failure to pay the amount due. Appellants, on the other hand, presented insufficient evidence of their affirmative defenses of the statue of limitations and statute of frauds.

Moreover, the trial court's award of attorney fees is supported both by the law and the evidence. And finally, Appellants were not entitled to their requested additional findings and conclusions because they were not supported by the evidence and were contrary to the court's previous findings. Appellants have shown no harm in the trial court's failure to enter them.

The judgment should be affirmed in all respects.

**ARGUMENT**

1.     *The Evidence Fails to Show that the Construction Contract was Completed More than Four Years Before Suit was Filed.*

Limitations of actions is an affirmative defense that must be specifically pleaded and proved. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex. App. – Houston [1st Dist.] 1984, pet. denied)  A party asserting limitations must not only establish the applicability of the limitation statute, but must, as well, prove when the opponents cause of action accrued in order to demonstrate the bar of limitations. *Hoffman v. Wall,* 602 S.W.2d 324, 326 (Tex. Civ. App. – Texarkana 1980, writ ref'd n.r.e.) Where reasonable minds may differ as to the inferences to be drawn from the evidence, it is incumbent upon the party asserting limitations to secure findings sustaining the plea of limitations. *Metal Structures Corp v. Plains Textiles, Inc.*, 470 S.W.2d 93, 99 (Tex. Civ. App – Amarillo 1971, writ ref'd n.r.e.)

Acknowledging they had the burden of proof on their affirmative defense of the statue of limitations, Appellants argue that they met that burden by showing by a preponderance of the evidence that suit was not brought within the four-year statute. Flessner will show that this is not true and that, instead, the evidence does not prove that its cause of action accrued before March 28, 2009, four years before suit was filed.

7

Appellants also admit that this was an agreement for a continuing contract for performance. *(Apt Br @15)* As such, a claim for payment or some other form of contractual performance is based on the entire continuous contract, and the limitation period on the claim for payment does not commence until the contract is fully performed. *See Intermedics Inc. v. Grady*, 683 S.W.2d 842, 845-46 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Alexander & Polley Constuction Co. v. Spain,* 477 S.W.2d 301, 303 (Tex. Civ. App. – Tyler 1972, no writ). For instance, if a party is hired to construct improvements to a house, with progress payments to be made but no dates or amounts of the payments are set out , a continuing contract is created such that the limitation period on a claim for payment does not commence until the contract has been concluded. *Godde v. Wood*, 509 S.W.2d 435, 437-441 (Tex. Civ. App. – Corpus Christi 1974, writ ref'd n.r.e)(when claim for work, labor, or material performed or furnished is outgrowth of entire contact for continuous work, labor, or material, claim is treated as entire demand and limitation period does not commence until contract has been finished.)

Here, the evidence shows that the job was not completed until as late as June of 2009, well with the four year statute, the lawsuit having being filed on March 28, 2013. Flessner testified that after the last date of work as showed on the bill, March 16, 2009, he was, for over two months "still there at the location changing out parts

and stuff and rearranging panel emperage load to ...balance some load and I was actually there up through the 27th or 28th and then completed the material, double checking the material list on the 29th and completed the invoice on the 30th." (*RR 11)* He continued working, doing warranty work and punch list things, finishing up in June of '09, even though he did not bill for any work after the 16th. *(RR 11)*

The only evidence offered by Appellants to dispute Flessner's testimony that he didn't finish the job until June of 2009, was the invoice itself which showed that last date work was billed for was March 16, 2009. At most, the evidence is conflicting. Flessner testified that this was the date just before he completed the invoice, but that he continued to finish the work for another almost two months. When viewed in light of all of the evidence and in favor of the trial court's judgment, the evidence supports the trial court's implied finding that the job was not finished until after March 28, 2009. The credibility of the witnesses and the weight to be given their testimony is for the trier of the fact. *See Alexander and Polley Construction Co., Inc. v. Spain,* 477 S.W.2d 301 (Tex. App.-- Tyler1972, no writ) (statute did not accrue because evidence showed that all of the dirt on the job was not removed until later).[2]

---

[2]Although Appellants' Brief repeatedly refers to "substantial" completion as the test for completion in limitation cases, the cites they rely on are unrelated to the statute of limitations and therefore irrelevant here. The limitations cases refer to the contract being "finished," "concluded" *(Godde)*, "final completion" *(Alexander and Polley)* and "fully performed"

9

The evidence on this issue is not well developed. Although it was Appellants' burden to prove the job was finished before March 28th, they offered no other evidence on this issue. The trial court as the fact finder was free to weigh the evidence and believe Flessner's testimony that he did not finish until June of 2009. *See Alexander and Polley.* The trial court's judgment should not be reversed on this ground.

> ### 2.    *The Law Does not Require a Contract for Services to be In Writing.  Even if it Did the Parties' Contract was Fully Performed, Taking it Out of the Statute of Frauds.*

Appellants next argue that the parties' agreement was required to be in writing and is therefore barred by the statute of frauds. Not only is this not true, the contract was undisputably performed and therefore would not come within the statute in any event.

The statute of frauds is an affirmative defense that must be pleaded affirmatively by the party that relies on it to avoid contractual liability. *See* TEX. R. CIV. P. 94; *Nicol v. Gonzales*, 127 S.W.3d 390, 393 (Tex. App. – Dallas 2004, no pet.) The party that pleads the statute has the initial burden of establishing its

---

*(Intermedics),* with only one case referring to "substantial" completion *(Godde)* . Godde also refers to "finished" and "concluded".  Therefore substantial completion is not the accepted standard for completion of a contract in limitation cases.  Even if it were, the evidence shows that the job was not substantially complete as of March 28, 2009.

applicability. *See Dynergy, Inc. v. Yates*, 422 S.W.3d 638, 641-2 T(Tex. 2013.)

As authority for their position that the contract was required to be in writing, Appellants rely on TEX. BUS. & COM. CODE ANN. §2.201(a). This statute, however, applies only to the sale of goods:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker...

The contract at hand was essentially for services, not goods, so this statute does not apply. Although the electrical services contract necessarily entailed Appellants buying some electrical equipment, the law is that when a contract is mixed goods and services, as here, but primarily a services contract, this statute does not apply. *See Geotech Energy  Corp. v. Gulf State*, 788 S.W.2d 386, 389 (Tex. App. – Houston [14th Dist.]1990, no writ)(essence of contract for installation of telephone equipment was rendering of services, not merchant selling goods); *Montgomery Ward & Co., Inc. v. Dalton,* 665 S.W.2d 507, 511 (Tex. App – El Paso 1983, no writ)(because essence of transaction was to provide materials and install roof was not to sell roofing materials, but to furnish labor to install roof, Article 2 was inapplicable); *G-W-L, Inc. v. Robichaux,* 643 S.W.2d 392, 394 (Tex. 1982), *overruled on other grounds*, *Melody Home Mfg. Co.v . Barnes*, 741 S.W.2d 349, 355 (Tex. 1987)("dominating factor" was

11

furnishing of labor and performance of work required for constructing house.)

The essence, or dominating factor, of the contract here was to provide the labor to tear out and install the electrical system at Appellant's convenience store. Article 2 on the sale of goods does not apply and the contract was not required to be in writing.

Even if the statute of frauds did otherwise apply here, the fact that the contract was fully performed would take it outside the statute. A party's complete performance of the party's obligations under a contract operates to take the contract outside the application of the statute of frauds. *See[3] Westergren v. Nat. Property Holding, L.P.,* 409 S.W.3d 110, 135 (Tex. App. – Houston [14th Dist.] 2013, no pet. h.) Ali admitted that Flessner did everything he asked him to do and on appeal argue that the job was completed.

Although not set forth in a separate issue, Appellants argue under this issue that the parties' oral contract was not sufficiently specific to enforce. Appellants' testimony, however, was that there was a contract to completely redo the electrical in the store and that the job was completed. His only dispute was with the price. On

---

[3]Appellants argue that the trial court made an implied finding that the parties' contract was in writing, and then challenge the sufficiency of the evidence to uphold that finding. This is not true. The trial court's implied finding that supports its judgment is that the parties' contract was primarily for services and therefore is not subject to the statute, and/or that the contract was performed, taking it out of the statute.

this issue, there was disputed evidence. Ali testified Flessner told him the cost would be no more than $45,000.00. Flessner, however, testified that he never gave Ali a price beforehand and that the final price as reflected in his systematic records, was, after all lawful offsets, $145,543.37. The trial court chose to believe Flessner, as was its province. The trial court's finding of a contract and damages is sufficiently supported by the evidence and should be upheld.

3.      *The Evidence Supports the Trial Court's Award of Attorney Fees for Breach of Contract.*

Appellants admit that a prevailing party in a contract action is entitled to attorney's fees under TEX. CIV. PRAC. & REM. CODE ANN. §38.001. They argue that the trial court's award of $4,500.00 is not supported by any evidence. Appellants maintain that there is no testimony or other evidence in the record as to attorney fees. However, a review of the record shows that Flessner's attorney Rob Lassman did testify to the court that a reasonable and necessary attorney's fee for this type of case and the amount of work involved was $4,500.00. *(RR 47)* Ali's attorney only asked Lassman one question about the lack of a demand letter and made no objection to this testimony. *(RR 47)*

Contrary, then, to Appellant's argument, Flessner was entitled to attorney fee

13

and the record fully supports the trial court's award of $4,500.00.

>    4.    *The Trial Court was Not Required to File Ali's Requested*
>          *Additional Findings Because They were Not*
>          *Supported by the Record and Conflicted with*
>          *the Court's Previous Findings and Conclusions. Moreover,*
>          *No Harm Resulted from Such Failure.*

The trial court was not required to file the additional findings and conclusions requested by Appellants. As admitted by Appellants, a trial court is not required to make additional findings of fact that are unsupported in the record, that are evidentiary, or that are contrary to other previous findings. *See Buckeye Ret. Co. L.L.C. v. Bank of AM, N.A.*, 239 S.W.3d 394, 402 (Tex. App. – Dallas 2007, no pet.) They further admit that the burden is on the party requiring additional findings of fact and conclusions of law to show how the trial court's failure to make additional findings and conclusions prevents that party from adequately presenting its complaint on appeal. *See City of Mc Allen v. Ramirez*, 2013 Tex. App. LEXIS 8887, *76 (Tex. App – Corpus Christi), *vacated on other grounds*, 3013 Tex. App. LEXIS 13785, *1 (Tex. App. – Corpu s Christi 2013, no pet.)

Appellants requested findings and conclusions in favor of their affirmative defenses of limitations and statute of frauds. As shown above, the evidence did not support such findings and conclusions. They also would be contrary to the findings of the court on liability and damages in Flessner's favor. Appellants' argument

14

simply begs the question of their other issues in this appeal, which are argued above and to which Flessner directs the court. The fact that Appellants would have prevailed in the case had the findings been entered is irrelevant, as they were not entitled to those findings.

Moreover, Appellants have adequately presented their appeal by arguing that Flessner's recovery should be barred due to their affirmative defenses. They have shown no harm.

Finally, Appellants' requested relief is inappropriate. At most, they would be entitled to an abatement and remand for entry of proper additional findings on their affirmative defenses. The law does not provide for rendition of a different judgment for a trial court's failure to file additional, or even original, findings. *See* TEX. R. APP. P 44.1; *Cherne Industires, Inc. v. Magallanes*, 763 S.W.2d 768, 773 (Tex. 1989); *City of Los Fresnos v. Gonzales*, 830 S.W.2d 627, 630 (Tex. App. – Corpus Christi 1992, no writ.)

The logical extension of Appellants' argument is that a party can win a case simply by requesting findings that are not supported by the evidence. Clearly this is not the law and should not be.

## PRAYER

WHEREFORE, Appellee respectfully prays that this case be set for submission and that upon consideration, the trial court's judgment be affirmed in all respects.

Respectfully submitted,

/s/ Cynthia T. Sheppard

_____

CYNTHIA T. SHEPPARD
Attorney at Law
State Bar No. 20245500
P.O. Box 67
Cuero, Texas 77954
Tele. (361) 277-8539
Fax (361) 277-8571
*ATTORNEYS FOR APPELLEE*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of Appellee's Brief was forwarded to all parties to the appeal by electronic means on this the 30th day of July, 2015, as follows:

/s/ Cynthia T. Sheppard

_____

Cynthia T. Sheppard

Ms Leslie Werner
P.O. Box 247
Victoria, Texas 770902
*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the applicable parts of this Brief of Appellee contains a total of4,347words, as verified by the software Word Perfect X5, in compliance with Tex. R. App. P. 9.4(i)(2)(B).

/s/ Cynthia T. Sheppard

_____

Cynthia T. Sheppard